UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
2012 OCT 18 PM 4:21
LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| FARENCO SHIPPING CO LTD | § | |
| | § | CIVIL ACTION NO. 12-2544 |
| Plaintiff, | § | |
| v. | § | JUDGE: SECT. A |
| | § | MAGISTRATE: MAG. 2 |
| FARENCO SHIPPING PTE LTD, OCEAN GREAT INDUSTRIAL LTD., TEAMZONE LTD., and LIU SONG | § | |
| Defendants. | § | |
| v. | § | |
| NORTON LILLY agent for the vessel M/V Ocean Shanghai and Defendants Solely as Garnishee. | § | |

**VERIFIED COMPLAINT**

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

Farenco Shipping Co Ltd. ("**Farenco BVI**" or "**Plaintiff**"), submits this verified complaint against foreign corporations and alter-egos Farenco Shipping Pte Ltd. ("**Farenco Singapore**"), Ocean Great Industrial Ltd. ("**Ocean Great**") and Liu Song (individually) (collectively, "**Defendants**"), and seeks the issuance of an order pursuant to both La. .Civ. Pro. Art. 3541(5) (the "**Louisiana Non-Resident Attachment Statute**") as well as Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("**Rule B**"),

___Fee
___Process
x Dktd
___CtRmDep
___Doc. No.

directing seizure and attachment Defendants' vessel, the M/V Ocean Shanghai ("**Vessel**"), which is presently within the jurisdiction of this honorable court:

## INTRODUCTION

1.      Plaintiff Farenco BVI is in liquidation proceedings in the British Virgin Islands ("**BVI Liquidation**") because it incurred approximately $65 million in debts in connection with breached forward freight agreements ("**FFAs**").

2.      Before being placed in Liquidation, Defendant Liu Song, the owner of Farenco BVI and non-party Approach Group Ltd. ("**Approach Group**") caused Farenco BVI to fraudulently and/or preferentially transfer of significant assets, including but not limited to approximately $71.3 million in cash, and Farenco BVI's "good business" to and for the benefit of Liu Song, and his companies Ocean Great and Farenco Singapore.

3.      Much of the $71.3 million was transferred from Farenco BVI to Apporach Group and then to other Liu Song owned entities. Approach Group was wholly owned by Liu Song but has since been placed in liquidation by the BVI Court due to the fraudulent and preferential transfers at issue. Liu Song had full control over the actions of Approach Group.

4.      Plaintiff's claims herein arise from the FFA debts incurred and these fraudulent and/or preferential transfers.

5.      Of particular importance to this action, Plaintiff can demonstrate that some of the $71.3 million funneled out of Farenco BVI through non-party Approach Group was **DIRECTLY UTILIZED** by Approach Group to purchase or facilitate the purchase of the M/V Ocean Shanghai for the benefit of Liu Song's other companies, Ocean Great and Farenco Singapore.

6.      The United States Bankruptcy Court for the Southern District of New York (the

"**NY Bankruptcy Court**") has recognized the BVI Liquidation of Farenco BVI as a foreign main proceeding pursuant to chapter 15 of the United States Bankruptcy Code of Title 11 of the United States Code ("**Chapter 15**"), 11 U.S.C. 1501 *et seq.. see In re Farenco Shipping Co. Ltd.,* 11-14138 (REG) (Bankr. S.DN.Y.) (February 24, 2012) (the "**Chapter 15 Case**").

7. The facts and circumstances surrounding the fraudulent and preferential transfers from Farenco BVI have been extensively briefed to the NY Bankruptcy Court in connection with a significant dispute concerning discovery in the Chapter 15 case, to which docket this Court is respectfully referred. The relevant motions are currently *sub judice*.

8. By this action, Farenco BVI directly asserts fraudulent and/or preferential transfer claims for money damages against Defendants pursuant to BVI law ("**BVI Law Claims**"). Attached hereto as Exhibit 1 is a media report describing the ongoing NY Bankruptcy Court proceedings, including an excellent summary of the fraudulent and/or preferential transfer claims at issue. As noted in Exhibit 1, the factual bases for Plaintiff's claims herein have been "meticulously documented" in the Chapter 15 case in the form of exhibits to declarations such as party admissions, emails and financial records that run in excess of 1000 pages. In view of the emergency nature of this motion, those exhibits have been omitted from this complaint so as to not burden this Court. Nevertheless, Plaintiff incorporates all of Farenco BVI's submissions in the Chapter 15 case by reference herein.

9. Farenco BVI further seeks attachment of Defendants' vessel, the M/V Ocean Shanghai pursuant to the Non-Resident Attachment Statute. The Fifth Circuit Court of Appeals has held that such foreign law-based claims may be asserted by debtors just like Farenco BVI in U.S. Courts. *See* 11 U.S.C. 1509; by *In re Condor Ins. Ltd.*, 601 F.3d 319, 324 (5th Cir. 2010).

10. Finally, by this action, Farenco BVI asserts a maritime indemnity claim against

Defendants arising from the FFA breaches ("**Indemnity Claim**"). To wit, the direct, but-for reason that Farenco BVI is liable is because of the fraudulent and/or preferential transfers to Defendants. Where the underlying claim sounds in admiralty, so does a claim for indemnity. As such, Farenco BVI seeks attachment of Defendant's Vessel pursuant to Rule B.

**JURISDICTION, VENUE AND PARTIES**

11. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333. This case is also brought pursuant to the provisions of Chapter 15, and specifically, 11 U.S.C. §1509. The BVI Law Claims asserted by Farenco BVI both arise in and are related to a Chapter 15 case and to the foreign liquidation of Farenco BVI.

12. Venue in this action is properly found in this Honorable Court pursuant to 28 U.S.C. § 1391(b) and the Non-Resident Attachment Statute.

13. This Court has *quasi in rem* jurisdiction over Defendants because the vessel is within this judicial district.

14. At all times material herein, plaintiff Farenco BVI is and was a foreign corporation or business entity organized under the laws of the British Virgin Islands ("**BVI**") and is presently in liquidation under the laws of the BVIs pursuant to Insolvency Act of 2003 of the British Virgin Islands (the "**2003 Act**"). John Ayres, a Managing Director of PriceWaterHouseCoopers (BVI) has been duly appointed by the BVI Court as the Liquidator of Farenco BVI, replacing Nicholas Francis James Carter, the former Managing Director of PriceWaterHouseCoopers (BVI).

15. Defendant Liu Song is an individual believed to be a citizen of China.

a. Liu Song was the beneficial owner and sole director of Farenco BVI (the Foreign Debtor).

b. Liu Song is also the sole director of Farenco Singapore and the beneficial owner of "Farenco Singapore" - the entity that mana ges/charters/operates the vessel Ocean Shanghai, and to which Farenco BVI's "good business" was fraudulently and/or preferentially transferred.

c. Liu Song was also the sole director and believed to be the sole shareholder of Approach Group the intermediary entity through which much of Farenco BVI's $71.3 million in cash was funneled to Liu Song controlled entities and persons, including but not limited to Defendants.

d. Liu Song is the sole director and beneficial owner of defendant Ocean Great, the registered owner of the Vessel Ocean Shanghai.

e. Liu Song is the sole shareholder of defendant Teamzone Ltd., a British Virgin Islands entity that is the sole shareholder of defendant Ocean Great, the registered owner of the Vessel Ocean Shanghai.

16. Non-Party Approach Group is a British Virgin Islands entity currently in liquidation pursuant to the 2003 Act.

a. John Ayres, the liquidator of plaintiff Farenco BVI, is also the duly appointed liquidator of Approach Group.

b. Non-party Approach Group is an intermediary entity through which the funds of Farenco BVI were fraudulently or preferentially transferred to Ocean Great, Farenco Singapore, Liu Song, and single-purpose ship-owning entities.

c. Approach Group was placed into liquidation upon the application of Mr. Nicholas Carter, the former Farenco BVI liquidator, due to the fraudulent and/or preferential transfers from Farenco BVI to Approach Group pursuant to the 2003 Act.  The BVI Court did so on the basis that Farenco BVI was a creditor of Approach Group in the minimum amount of $31.679 million fraudulently transferred (approximately $18.7 million in fraudulent and/or preferential transfers had yet to be discovered at the time of the Approach Group liquidation application).  It is believed that Farenco BVI is Approach Group's sole creditor.

d. Attorneys for Farenco Singapore have claimed that the transfers were made pursuant to an "Investment Management Agreement" (suspiciously produced only after a year of litigation) and were not fraudulent.  Even assuming that this explanation is valid (which is expressly denied), the funds were nevertheless transferred to "Connected Parties" during the 2003 Act's "vulnerability period" to the detriment of creditors and hence are preferential and wrongful.  Moreover, the former management of Approach Group has declined to appear in the Approach Group liquidation proceedings and assert this explanation.

e. Approach Group directly financed the purchase of the vessel M/V Ocean Shanghai (f/k/a "Fortune Ocean") with Farenco BVI funds.  On December 9, 2009, Approach Group made a $7.42 million payment to a Panamanian entity called White Bellflower Shipping S.A. ("**White Bellflower**"), the Ocean Shanghai's former owner, with the payment reference ""OBI - Purchasing Fund for M/V Fortune Ocean..."  After this payment, the Fortune Ocean was renamed

Ocean Shanghai, and its registered owner was changed from White Bellflower to defendant Ocean Great.

17.    Upon information and belief, at all times material herein, Defendant Ocean Great is and was a company incorporated under the laws of Hong Kong and is a single vessel owning company with no employees.

    a.  Ocean Great is the registered owner of the vessel Ocean Shanghai. Ocean Great is beneficially owned and controlled by Liu Song.

    b.  The Vessel Ocean Shanghai was purchased for Ocean Great by Approach Group using fraudulently and/or preferentially transferred funds of Farenco BVI.

    c.  Upon information and belief, Ocean Great charters the Vessel Ocean Shanghai to Farenco Singapore for inadequate or no consideration.

18.    Upon information and belief, at all times material herein, Defendant Farenco Singapore is and was a company incorporated under the laws of Singapore.

    a.  Farenco Singapore was established by Liu Song in order to wrongfully create a "good company/bad company" structure with the intent and purpose of maintaining Farenco BVI's good business while unlawfully avoiding Farenco BVI's debts.

    b.  Farenco Singapore is the successor in interest to and alter ego of Farenco BVI. Farenco Singapore is the manager/charterer/operator of the vessel Ocean Shanghai.

    c.  Farenco Singapore potentially maintains an ownership interest in bunker fuel aboard the vessel Ocean Shanghai.

    d.  Farenco Singapore is beneficially owned and controlled by Liu Song.

e. Farenco Singapore was the recipient of Farenco BVI's "good" business, know how, goodwill and charters in violation of the BVI 2003 Act.

f. Farenco Singapore was capitalized by Approach Group in the amount of $10.1 million in funds that were fraudulently and/or preferentially transferred out of the Farenco BVI estate.

g. Farenco Singapore was the direct recipient of an apparently consideration-less (and hence fraudulent) transfer of $4.655 million from Farenco BVI during Farenco BVI's vulnerability period.

h. Upon information and belief, Farenco Singapore receives charter hire from third parties in connection with the vessel Ocean Shanghai. Upon information and belief, Farenco Singapore charters the vessel Ocean Shanghai from Ocean Great for inadequate or no consideration.

**Rule 44.1 Statement of Intent to Rely on Foreign Law**

Plaintiffs intend to rely on foreign law, specifically the laws of the British Virgin Islands and the laws of England.

**BACKGROUND FACTS AND ALLEGATIONS**

**Farenco BVI's Business and Liquidation**

19. On November 16, 2004, Farenco BVI was incorporated in the British Virgin Islands. The sole director and shareholder of Farenco BVI is Liu Song. From its inception to its ultimate liquidation, Farenco BVI appeared to have been engaged in the business of chartering vessels and trading Forward Freight Agreements ("**FFAs**"), which are futures based upon the cost of freight associated with maritime trade routes.

20. On or around December 2007, Liu Song submitted an application on behalf of Farenco BVI to Merrill Lynch's Hedge Funds and Managed Future Funds seeking a credit facility of $5,000,000.00. The application lists liquid assets and net worth each exceeding $5,000,000.00 and combined annual income from all sources exceeding $1,000,000.00. It describes its risk tolerance as "moderate."

21. A September 2008 Farenco sales presentation described Farenco as a rapidly growing "debt-free company" with a "strong cash position" and revenue projected to reach $700 million by 2013.

22. In the 4th quarter of 2008, the market for transportation of cargo suffered a collapse as a result of the global economic downturn. At that time, the Baltic Dry Index, which measures average global freight prices for the transportation of bulk goods, collapsed, and the price of carrying bulk goods and the demand for carriage of bulk goods dropped significantly. As a result, Farenco BVI suffered losing FFA trading positions and ultimately it could not pay its debts as they became due. On the other hand, its vessel chartering operations appear to have been relatively unaffected through 2008.

23. On April 28, 2011, non-party Agrenco Madeira Comercio Internacional made an application to the BVI Court for an order under the 2003 Act placing Farenco BVI in liquidation and for the appointment of a Liquidator.

24. On May 30, 2011, the BVI Court issued an order placing Farenco BVI into liquidation and appointing Nicholas James Francis Carter liquidator (the "Liquidation Order").

25. Entry of the Liquidation Order resulted in the commencement of a foreign proceeding as defined in 11 U.S.C. § 101(24).

26.   As set forth in section 184 of the 2003 Act, a liquidator appointed under the 2003 Act is required to locate, preserve, gather in, and realize the world-wide assets of the debtor entity for the benefit of creditors.

27.   The powers of the Liquidator are broadly comparable to those of a trustee under chapter 7 of the United States Bankruptcy Code.  The Liquidator is further empowered to continue wind up operations of Farenco BVI subject to the BVI Court's approval, including maximization of the value of the estate for creditors.

28.   From the outset, the Liquidator of Farenco BVI considered the apparent transfer of business from Liu Song-controlled Farenco BVI to Liu Song-controlled Farenco Singapore suspicious and worthy of investigation, particularly given the lack of records voluntarily supplied in the liquidation despite requests for such information by the Liquidator.

29.   It was partially based on these suspicions that he obtained sanction from the BVI Court to file the Farenco BVI Chapter 15 in the New York Bankruptcy Court, as he was aware that at the direction of Liu Song, Farenco BVI and Farenco Singapore had registered to do business in New York as foreign corporations, conducted banking and wire transfers through New York banks, and had utilized New York legal counsel.

30.   On July 27, 2011, the BVI Court issued an order providing that "[t]here be sanction to bring proceedings in New York in the name of and on and behalf of the Company [Farenco BVI] for the purpose of obtaining discovery against and/or in relation to the affairs of the Company, Farenco Shipping Pte. Ltd. [Singapore] and Farenco Transportation Co. Ltd. [Hong Kong] ***and their associates***."

31.   Through the United States discovery, in particular a production of legal files and correspondence from the law firm of Blank Rome LLP (the "**Blank Rome Production**") the

Liquidator learned that Liu Song and Farenco Singapore planned and caused the intentional "migration" of Farenco BVI's business to Farenco Singapore.

32. Also through the New York discovery provided by New York financial institutions ("**Intermediary Bank Discovery**"), it became apparent that $71.3 million was transferred from Farenco BVI to Approach Group without any apparent consideration ("**Approach Group Transfers**"). The Liquidator's investigation of the Approach Transfers is ongoing.

33. The funds channeled through Approach Group were used to facilitate the purchases of at least two - and likely four - vessels that are (i) now managed/operated/chartered by Farenco Singapore and (ii) are beneficially owned by Liu Song through ownership and control of Farenco Group and single--purpose affiliate entities - including the vessel at issue, the M/V Ocean Shanghai.

34. As a result of the Farenco Singapore migration and the Approach Group Transfers, Farenco BVI was transformed from a "debt free" company with a "strong cash position" in 2008, to a company in 2011, that, in Liu Song's own words, was a "shell" with no "books or records" and approximately $70.3 million in debt.

35. From the outset of the Farenco BVI liquidation, Farenco Singapore and Liu Song have repeatedly attempted to block the Liquidator's investigation efforts.

36. These blocking efforts range from wrongfully withdrawing funds from Farenco BVI's bank accounts after the commencement of the Farenco BVI liquidation, to denying the existence of books and records in connection with Farenco BVI's significant business.

**Approach Group and Its Liquidation**

37.     On December 8, 2004, Approach Group was incorporated in the British Virgin Islands. The sole director of Approach Group is Liu Song according to BVI records. Liu Song is believed to be the sole shareholder.

38.     On April 28, 2009, BVI law's two-year "vulnerability" period commenced for Farenco BVI.

39.     Approach Group, at the instruction of Liu Song, applied for voluntary liquidation on June 7, 2011, a week after Farenco BVI was placed in liquidation by the BVI Court.

40.     In connection with this voluntary liquidation application, Approach Group, and in particular its director Liu Song, represented that it had " 'no creditors,' and further that it 'could meet its debts as they fell due.'"

41.     Between April 28, 2009 and May 30, 2011, Farenco BVI made various bank transfers from its HSBC accounts to Approach Group totaling $31.679 million. At a minimum, these transfers appeared to constitute "undervalue" transactions under BVI law, which may be clawed back. An additional $18.7 million was transferred from Farenco BVI's China Merchants Bank account to Approach Group during the same period.

42.     On 16 November 2011, the BVI Court ordered that Approach be restored as a company, in order that Farenco BVI could pursue its claims against Approach. Under BVI law, Approach was not restored back to liquidation; it was restored into normal corporate existence.

43.     On February 20, 2012, the BVI Court considered that Farenco BVI's claw back claim against Approach Group was proved on the evidence. On February 20, 2012, the BVI Court Appointed the Farenco BVI Liquidator as Liquidator of Approach Group. In a transcribed opinion, the BVI Court held that Farenco BVI's clawback claim in the amount of $31.679 million had been proved on the evidence as follows: "[Farenco BVI's claim] *is not a contingent claim. It*

*is an existing one which is based on a series of facts **which have been proved** to the Court and which constitute the cause of action necessary to satisfy that section".*

44.    On June 15, 2012, nearly a *year* after Liu Song reported that there were "no books and records" of Farenco BVI, only *after* substantial U.S. and BVI litigation, *after* significant on-the-record as well as "without-prejudice" communications between the parties, and only *after* being confronted with the detailed results of the third-party discovery (including the Approach Group transfers), Farenco Singapore produced a document purporting to be a "Management Agreement" between Farenco BVI and Approach Group.

45.    Under the so-called the Management Agreement, Farenco Singapore contends that Farenco BVI was actually conducting business on behalf of Approach as an "undisclosed principal." Even assuming that the Management Agreement is not a forgery or a sham and is otherwise valid, there are two implications of the Management Agreement:

      a.   Approach Group consistently made perfect FFA bets while Farenco BVI's bets either lost or were uncollectible; and

      b.   that Approach Group - an indisputable "connected and/or related" entity under BVI law - apparently received approximately $50.379 million in preferential payments during the two-year "vulnerability" period, which payments ultimately inured to the direct benefit of Farenco Singapore and Liu Song.

46.    Nor does the Management Agreement explain or validate the transfers as being for value and not fraudulent.

      a.   There is no obvious segregation of money and trades pertaining to Farenco BVI's own FFA's from those pertaining to Farenco BVI's trades on behalf of Approach. In other words, there is currently nothing which independently and

contemporaneously shows that a particular FFA trade was at the time struck by Farenco BVI on behalf of Approach, rather than by Farenco BVI on its own behalf.

b. There is also a claim that some of the wrongfully transferred money was pursuant to a valid assignment - i.e. certain FFA trades originally struck by Farenco on its own behalf, were then assigned to Approach on 14 November 2008, in return for a payment of $10.4m. The reason for these assignments is not stated or apparent, but these assigned trades subsequently came 'in the money' for substantially more than $10.4m. Further, the source of the $10.4m used by Approach to pay Farenco BVI has been traced back to a Farenco BVI account at Merrill Lynch New York.

47. Moreover, the legitimacy of the alleged Investment Management arrangement is substantially undermined by the fact that Approach Group has never contested the findings of the BVI Court, even though it had ample opportunity to do so.

48. In sum, the explanations put forth by Liu Song lack credibility and have not been accepted by the Liquidator. Even if the explanation was valid, the transfers were still made to a connected creditor, Approach Group, within the 2003 Act vulnerability period to the detriment of creditors. The 2003 Act permits the money, and fruits thereof to be clawed back on exactly the same basis for preferential transfers as it does fraudulent transfers.

**Approach Group's Purchase of the "Four Ocean Vessels", Including the Vessel Ocean Shanghai**

49. According to Farenco Singapore's website, Farenco Singapore manages/charters/owns four vessels named with the prefix "Ocean": the M/V Ocean Tianjin ("**Ocean Tianjin**"); the M/V Ocean Shanghai ("**Ocean Shanghai**"); the M/V Ocean Dalian

("**Ocean Dalian**"); and the M/V Ocean Qingdao ("**Ocean Qingdao**") (collectively, the "**Ocean Vessels**").

50.     The Ocean Shanghai is the Vessel that Plaintiffs seek to attach in this action.

51.     The Ocean Shanghai was previously named the M/V Fortune Ocean and was owned by a Panamanian entity called White Bellflower Shipping S.A. ("**White Bellflower**").

52.     On or about December 9, 2009, Approach Group made a $7.42 million payment to White Bellflower with the reference "OBI - Purchasing Fund for M/V Fortune Ocean...").

53.     After this payment, the Fortune Ocean was renamed Ocean Shanghai, and its registered owner was changed from White Bellflower to Defendant Ocean Great.

54.     Ocean Great was incorporated in Hong Kong on November 19, 2009. Liu Song is its sole director, and BVI entity Teamzone is Ocean Great's sole shareholder. Liu Song is the sole shareowner of Teamzone. Approach Group made a transfer of $10 million to Teamzone on or about August 14, 2009.

55.     In the same process, Farenco Singapore, also beneficially owned and controlled by Liu Song, became manager/operator/charterer of the Ocean Shanghai and began receiving significant, regular charter hire in connection with that vessel. Furthermore, Farenco Singapore is the guarantor of a $40 million loan facility between China Merchants Bank as lender, and Ocean Shanghai owner Ocean Great as borrower.

56.     Aside from two initial hire payments, there is no evidence that Farenco Singapore pays Ocean Shanghai for use of the vessel.

57.     The Liquidator's investigation has revealed similar patterns with respect to the Ocean Shanghai, Ocean Dalian and Ocean Qingdao, which are omitted here solely for the sake of brevity.

**The "Migration" From Farenco BVI to Farenco Singapore**

58.    Farenco Singapore was incorporated in Singapore on or about August 28, 2008, and is beneficially owned by Liu Song.  Liu Song is the sole director of Farenco Singapore.

59.    The creation of Farenco Singapore coincides with (a) financial downfall of Farenco BVI, (b) the month preceding the first FFA payment due date to Farenco BVI creditor Agrenco and (c) the stated intention to migrate Farenco BVI's "physical business" to a Singaporean entity, creating a successor in interest company.

60.    Moreover, Farenco Singapore was capitalized by Approach Group in the minimum amount of $10.1 million using wrongfully transferred Farenco BVI funds.  As such, Farenco Singapore's very existence is the fruit of a wrongful transfer that may be clawed back under BVI law.

61.    Farenco Singapore took over the chartering business of Farenco BVI via the planned "migration."

62.    Farenco Singapore appropriated Farenco BVI's employees, offices, contact lists, know how, then-good name, customer base (i.e. clients for subcharters), supplier base (i.e. vessel charterers and owners) and various contracts.

63.    At least two charters active charters - the M/V Yuan Zhi Hai and the M/V Great Prestige - that were assigned to Farenco Singapore for a significant undervalue.

**Liu Song's Control Over All the Entities and Wrongful Conduct**

64.    Under BVI law, a director must not misappropriate corporate assets, exploit or divert corporate opportunities for the benefit of himself or others, or deal with the company on his own account and for his own benefit.  In the event a director does these things the company

has claims to recover those assets and opportunities, and any fruits thereof, not just against the director, but against knowing recipients and accomplices.

65.    On July 8, 2011, ***after the commencement of the Farenco BVI Liquidation*** $17,120.11 was stolen from a Farenco BVI account at China Merchants Bank. Liu Song had sole signatory authority with respect to that account. It is believed Liu Song took these funds after the Liquidator had been appointed over Farenco BVI to deprive the Liquidator of funds necessary to engage in discovery concerning the various wrongdoings so Liu Song could prevent the Liquidator from investigating and unraveling the fraud.

66.    Based upon the bank records, the following considerationless (and apparently fraudulent) transfers were also made from Farenco BVI and Approach Group to Liu Song:

    a.   December 18, 2009 - payment of 200,000 HK$ from Approach Group to Liu Song's personal bank account.

    b.   April 15, 2010 - payment of $200,000 from Farenco BVI to Approach Group, along with payment of $200,000 on the same date from Approach Group to Liu Song's personal bank account.

    c.   May 18, 2010 - payment of $1.45 million from Approach Group to Liu Song's personal bank account.

    d.   July 12, 2010 - payment of $1.887 million from Farenco BVI to Approach Group, and then a payment of $1.8 million the following day from Approach Group to a personal, United States-based account at Merrill Lynch Pierce Fanner & Smith in the name of Liu Song.

    e.   January 14, 2011 - payment of $3 million from Approach Group to a BOCI Securities Ltd. account with Liu Song named as beneficiary.

f. June 29, 2011 – payment of $608,250 from Approach Group to Liu Song (incidentally the day before approach was placed in voluntary liquidation)

**The Replacement of Nicholas Francis James Carter with John Ayres**

67. On July 31, 2012, Nicholas Carter retired from PriceWaterhouseCoopers (BVI) Limited and returned to his native country of Australia. His retirement was long-planned.

68. Under the circumstances, the BVI Court has appointed John Ayres, newly-promoted Managing Director of PriceWaterhouseCoopers, who had worked on the Farenco BVI and Approach liquidations since their inception, as Liquidator of Farenco BVI and Approach Group. Attached hereto as Exhibit 2 is a true and correct copy of the BVI Court's order effectuating this transfer. The same order appoints Mr. Ayres Liquidator of a number of other entities that were formerly being liquidated by Mr. Carter, and which are not related to this case.

**COUNT 1: FARENCO BVI's BVI LAW CLAIMS AGAINST OCEAN GREAT AND FARENCO SINGPORE**

69. Farenco BVI repeats and re-alleges each and every allegation set forth in Paragraphs 1- 68 of this Verified Complaint as if fully set forth herein.

70. The BVI Court has already determined that Farenco BVI is a creditor of Approach Group in the minimum amount of $31.679 million. In particular, the BVI Court found that Farenco BVI's undervalue transfer claim in that amount against Approach Group had been proved on the evidence. At the time of the BVI Court ruling that Farenco BVI was a creditor of Approach Group on the basis of fraudulent transfers, approximately $18.7 million in additional Approach Transfers were unknown, but have since been discovered.

71. The 2003 Act is the law governing involuntary corporate insolvency in the BVI. Insolvency procedures provided for in the 2003 Act include liquidations, creditor arrangements, receiverships and administrative receiverships.

72. Where a company has been put into insolvent liquidation, its claims to recover such property not only survive its liquidation, but are usually only brought to light by liquidation, since in many instances liquidation will be the first opportunity for an independent and objective appraisal of the company's transactions.

73. In particular, the liquidator may claw back: a) transactions at undervalue; and b) preferences, both being categories of 'voidable transactions' under the 2003 Act. *See generally,* Part VIII of the 2003 Act, Entitled "Voidable Transactions." As set forth in §244 of the 2003 Act, "voidable transactions" include "(a) an unfair preference; (b) an undervalue transaction."

74. Transactions at undervalue are those where the company has, within a specified time window prior to its liquidation, transferred its assets to another person for insufficient or no consideration, and either the company was insolvent at the time, or the transactions made the company insolvent. *See* §246 of 2003 Act. There is a defense that the company entered into the transaction in good faith for the purposes of its business and there were at the time, reasonable grounds for believing that the transaction would benefit the company

75. Preferences are payments made by the company to a creditor within a specified time window prior to its liquidation, which have the effect of making that creditor better off in the company's liquidation than other creditors. Similarly, either the company must have been insolvent at the time, or the payments made the company insolvent. There is a defense that the transaction took place in the ordinary course of business. *See* §245 of the 2003 Act.

76. Where the undervalue transferee or preferred payee is a connected party, including a related company, the specified time window is much longer, and there is a rebuttable statutory presumption that the company was insolvent at the time of the transaction or was made insolvent by the transaction. There is also a rebuttable presumption that the transaction was not a

legitimate transaction. The terms "connected party" and related company are defined in §§4-5 of the 2003 Act. All of the Defendants are "connected parties" within the meaning of the 2003 Act.

77.     Pursuant to the 2003 Act, the Liquidator is empowered to "claw back" transfers that are either preferential or undervalue. The Liquidator's claw-back reach is not confined to the initial transferee or payee, but extends to conduits and ultimate recipients. *See* 2003 Act §§249-250. These are claims for money damages.

78.     As set forth in detail above, Approach Group purchased the vessel Ocean Shanghai using wrongfully transferred Farenco BVI funds and the Vessel was registered in the name of defendant Ocean Great. Farenco BVI thus has a direct claim against Ocean Great for money damages under the 2003 Act.

79.     Moreover, Farenco BVI can demonstrate a significant probability of success on the merits as the BVI Court has already ruled Farenco BVI's claim against Approach Group proved on the evidence.

80.     The Vessel Ocean Shanghai has a direct relationship to Farenco BVI's claim because it was purchased by or through Approach Group at the direction of Liu Song for the benefit of Ocean Great using wrongfully transferred Farenco BVI funds.

81.     Farenco BVI additionally maintains claims against Farenco Singapore for money damages arising from the wrongful "migration" of business from Farenco BVI to Farenco Singapore, including but not limited to the following:

   a.   The capitalization of Farenco Singapore by Approach Group in the amount of $10.1 million;

   b.   The transfer of $4.655 million from Farenco BVI to Farenco Singapore during the vulnerability period;

88. Furthermore, Farenco BVI submits with this application, a bond in the amount of $250.

89. The Louisiana Non Resident Attachment statute provides that a bond in the amount of $250 is appropriate for security for an attachment obtained on the sole ground that the defendant is a nonresident. La. Civ. Pro. Art. 3544.

90. Thus, security in the amount of $250 is the default and sole requirement for the issuance of the requested attachment order. *See Vivian Tankships Corp. v. Castro,* 24 F.Supp.2d 650 (E.D.La. 1998) (upholding constitutionality of attachment of vessel worth millions of dollars on $250 attachment bond) (judgment *vacated* on the ground of mootness at 254 F.3d 1080 (5th Cir. 2001)).

**COUNT II: FARENCO BVI'S MARITIME INDEMNITY CLAIM**

91. Plaintiff alleges paragraphs 1 - 90 of the complaint as if fully set forth herein.

92. Agrenco Madeira Comercio Internacional ("**Agrenco**"), a foreign entity, entered into three forward freight agreements ("**FFAs**") with Farenco BVI. These FFAs are described in Agrenco's Statutory Demand, attached hereto as Exhibit 3.

93. Pioneer Freight Futures ("**Pioneer**"), a foreign entity, entered into a series of FFAs with Farenco BVI. These FFAs are set forth in Pioneer's proof of claim, and tables of debts, attached hereto as Exhibit 4.

94. An FFA is an agreement to discount or increase the cost of freight aboard a vessel at a future date, pursuant to vessel descriptions and trade routes. Numerous courts, including the Eastern District of Louisiana, have held FFAs to be maritime claims and/or have issued Rule B attachment orders on the basis of maritime claims.[1]

1One court in the Central District of California has held that an FFA is not a maritime contract, but its reasoning is not sound.

c.  The undervalue or preferential transfers of the Great Prestige and Yuan Zhi Hai charters; and

d.  The undervalue transfer of employees, operations, business know how, and third party relationships to Farenco Singapore which were the property of Farenco BVI.

82.     According to 11 U.S.C. §1509, Farenco BVI has a right to bring its BVI Claims for money damages in the United States. *See In re Condor Ins. Ltd.*, 601 F.3d 319, 324 (5th Cir. 2010) (reversing lower court and upholding foreign liquidator's right to bring foreign claw-back claims pursuant to chapter 15).

83.     Pursuant to the La. Civ. Pro. Art. 3541(5), the Louisiana Non-Resident Attachment Statute, attachment is available against any company in connection with a claim for money damages where the corporate defendant is not subject to general jurisdiction in Louisiana and does not have an agent for service of process in Louisiana.

84.     Neither Farenco Singapore, Teamzone, Ocean Great, nor Liu Song are subject to general jurisdiction in Louisiana.  Nor do they have an agent for service of process.

85.     Farenco BVI maintains claims against Farenco Singapore, Teamszone, Ocean Great and Liu Song under BVI law for money damages.

86.     In the alternative, as set forth in paragraphs 91-115 below, Farenco BVI maintains claims against Farenco Singapore, Liu Song, Teamzone and Ocean Great because each is an alter ego of Approach Group, against whom it maintains claims for money damages.

87.     Whereas Farenco BVI's claims meet all of the requirements of the Louisiana Nonresident Attachment Statute, Farenco BVI respectfully requests this Court to issue a writ and order directing the immediate attachment of the vessel Ocean Shanghai, and any property aboard that is owned or beneficially used by Farenco Singapore, Teamzone, Ocean Great or Liu Song.

95. On or about October 28, 2009, Farenco BVI breached its FFA agreements with Agrenco and Pioneer.

96. As a result of the breach, Agrenco has claimed the sum of $15,957,572.98 from Farenco BVI.

97. As a result of the breach, Pioneer has claimed the sum of $53,233,664.89 from Farenco BVI.

98. Defendants Liu Song, Teamzone, Ocean Great and Farenco Singapore are alter-egos of Farenco BVI and are liable for Farenco BVI's debts to Agrenco and Pioneer.

99. Federal maritime law governs the issue of piercing the corporate veil in admiralty actions such as this.

100. Under federal maritime law, courts will pierce the corporate veil upon a showing of *either* domination *or* fraud. Here, Plaintiff can demonstrate both.

101. Farenco BVI, Farenco Singapore, Teamzone and Ocean Great are all directly or beneficially owned by Liu Song. Liu Song maintains all of the ownership interests in these entities as, well as the single-purpose holding companies that exist solely to "hold" the shares of Farenco Singapore and Ocean Great so as to obfuscate their true ownership.

102. Liu Song completely dominates and controls Farenco Singapore, Teamzone and Ocean Great, and prior to its liquidation, completely dominated and controlled Farenco BVI and Approach Group such that all of these entities are in fact carrying on the personal shipping and FFA trading business of Liu Song and vice-versa.

103. Through intermediary entity Approach Group, Liu Song, Teamzone, Ocean Great and Farenco Singapore wrongfully removed approximately $50.379 million from the Farenco BVI estate. The fruits of these transfers were, *inter alia,* the $10.1 million capitalization of

Farenco Singapore by Approach Group, the purchase of the vessel Ocean Shanghai (placed in Ocean Great's name), as well as the purchase of the three other "Ocean Vessels" (placed in the name of other Liu Song owned/controlled single purpose entities).

104. When deciding whether to pierce the corporate veil, Courts examine a number of factors. These factors include (1) common or overlapping stock ownership between parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate office; (4) inadequate capitalization of subsidiary; (5) financing of subsidiary by parent; (6) parent exists solely as holding company of subsidiaries; (7) parent's use of subsidiaries' property and assets as its own; (8) informal intercorporate loan transactions; (9) incorporation of subsidiary caused by parent; (10) parent and subsidiary's filing of consolidated income tax returns; (11) decision-making for subsidiary by parent and principals; (12) subsidiary's directors do not act independently in interest of subsidiary but in interest of parent; (13) contracts between parent and subsidiary that are more favorable to parent; (14) non-observance of formal legal requirements; (15) existence of fraud, wrongdoing or injustice to third parties. 16) overlap in personnel, (17) common address and telephone numbers, (18) the degree of discretion shown by the allegedly dominated corporation, and (19) payment or guarantee of the corporation's debts by the dominating entity.

105. Almost all of these factors are present in this case, and supported by voluminous documentary evidence.

a. Farenco Singapore, Farenco BVI, Teamzone and Ocean Great share directly overlapping stock ownership (all are solely owned either directly or demonstrably indirectly, by Liu Song).

b. The entities have wholly overlapping directors and employees. Liu Song is the sole director of all entities and Farenco Singapore appropriated the employees of Farenco BVI.

c. All entities use the same corporate offices in China and Singapore, and maintain identical contact information.

d. Liu Song, Farenco Singapore, Teamzone and Ocean Great caused Ocean Great to become grossly undercapitalized as a result of the series of transfers totaling $50.379 million and assignment of Farenco BVI's ongoing charters (i.e. its revenue stream) to Farenco Singapore.

e. Farenco Singapore, Teamzone and single-purpose entity Ocean Great's sole asset were capitalized by Approach Group, which is also solely owned and controlled by Liu Song, using wrongfully transferred Farenco BVI funds.

f. Farenco Singapore, Farenco BVI, Teamzone, Ocean Great and Liu Song commingle the assets of the group and contracts are overtly favorable to Liu Song and Farenco Singapore.  This is evidenced not only by the asset transfers but also by the suspicious assignments of charter agreements and FFAs for dubious consideration.  Moreover, it appears that although it is the nominal owner of the vessel Ocean Shanghai, Ocean Great has not been receiving charter hire (beyond the first two payments) from Farenco Singapore.  At the same time, Liu Song owned and controlled Farenco Singapore collects charter hire from third parties for use of the Ocean Shanghai.  Finally, the contact lists, know-how, business relationships and other significant intangible assets of Farenco BVI as a going

concern transacting hundreds of millions of dollars of business was wrongfully usurped by Farenco Singapore.

g.  The existence of a significant fraud has been discussed in detail herein - namely, the draining of Farenco BVI's corporate assets by Liu Song via Approach Group. This fraud transformed Farenco BVI from a healthy company to an assetless "shell."

h.  Farenco Singapore further guaranteed the mortgage of the vessel Ocean Shanghai, on behalf of Ocean Great, the registered owner.

106.   Admiralty Courts have routinely upheld Rule B attachment orders based on single allegations of one entity paying the debt of another.  Plaintiff respectfully submits that ample evidence and allegations described support the issuance of a Rule B order of attachment against Ocean Great, Teamzone, Farenco Singapore and Liu Song here.

107.   The but-for and sole reason for Farenco BVI's breach of these FFAs with Agrenco and Pioneer was the wrongful transfer of approximately $71.3 million in cash, Farenco BVI's ongoing business, ongoing charters, and intangible property.  These wrongful transfers were orchestrated by Liu Song, Teamzone, Farenco Singapore and Ocean Great.

108.   Liu Song, Farenco Singapore, Teamzone and Ocean Great intentionally transferred or caused to be transferred the assets from Farenco BVI so that those assets could not be used to pay the creditors' FFA maritime claims.

109.   As set forth in great detail in Count I of this complaint, these transfers constitute fraudulent and/or preferential transfers under the 2003 Act.

110.   Additionally, and/or in the alternative Liu Song breached his fiduciary duties as director of Farenco BVI and Approach Group in connection with these wrongful transfers.

111.    The fundamental principle of BVI law which underlies the claims as a whole, is that a company's assets belong to the company as a separate legal entity and not to its shareholders, and those assets are only to be utilized in the best interests of the company. Where a company is in financial difficulties and creditors are at risk, then the best interests of the company are to be equated with the interests of the creditors.

112.    The responsibility for ensuring that the company's best interests are served falls upon the organ tasked with management of the business and affairs of the company. Under BVI law, and subject to any provision otherwise in the memorandum and articles of association of the company, that organ is the board of directors, or if there is only one director, that sole director.

113.    The juridical basis for the director's responsibility to act in the best interests of the company is fiduciary duty. This duty under BVI law is, in essence, a duty of exclusive loyalty to the company which overrides the interests of others and especially overrides self-interest. The company must always come first. Therefore, a director must not misappropriate corporate assets, nor is he entitled to exploit or divert corporate opportunities for the benefit of himself or others, or deal with the company on his own account and for his own benefit. If he does so, the company will have claims to recover those assets and opportunities, and any fruits and/or proceeds thereof, not just against the director, but against knowing recipients and accomplices.

114.    Ocean Great, Teamzone, Farenco Singapore, and Liu Song are not present in the district for the purposes of Rule B.  They are neither subject to general jurisdiction nor do they maintain agents for service of process.

115.    Wherefore, Farenco BVI seeks a Rule B attachment against Liu Song, Teamzone, Farenco Singapore and Ocean Great's property, the vessel Ocean Shanghai, as well as any property of Defendants aboard or in the District, on the basis of its maritime indemnity claim.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Farenco BVI prays as follows:

1. That an order of attachment pursuant to Louisiana's Non-Resident Attachment Statute issue against Defendants Farenco Singapore, Teamzone, Ocean Great and Liu Song in the amount of $71,300,000.00, or in the alternative, in an amount not exceeding the value of the vessel Ocean Shanghai and any of Defendants' property aboard and/or in the District, in order to secure *quasi in rem* jurisdiction and security for Plaintiff Farenco BVI's claim for money damages against Defendants, and that a cash bond for said attachment in the amount of $250 be set and held good and sufficient security under Louisiana law.

2. That process in due form of law, including but not limited to process under Rule B, according to the rules and practices of this Court in the form of a writ of maritime attachment be issued against defendants Farenco Singapore, Teamzone, and Ocean Great, in the amount of $69,191,237.87 arising from Farenco BVI's maritime indemnity claim; and if Defendants cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the District, including the M/V OCEAN SHANGHAI, may be attached in an amount sufficient to answer Farenco BVI's claims;

3. That any property attached in this proceeding be expeditiously sold under the direction of this Court and that the proceeds of the sale be brought into this Court to satisfy all amounts owed to Farenco BVI;

4. That Farenco Singapore, Teamzone, Ocean Great, Liu Song and any other person

claiming an interest therein may be cited to appear and answer the matters aforesaid;

5. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and,

6. That this Court grant Farenco BVI such other and further relief which it may deem just and proper.

Respectfully submitted,

Laurence R. DeBuys IV (14202)
Patrick H. Patrick, T.A. (14297)
Stephen E. Mattesky (09046)
PATRICK MILLER LLC
400 Poydras Street, Suite 1680
New Orleans, Louisiana 70130
Telephone: (504) 527-5400
Facsimile: (504) 527-5456
E-mail: ppatrick@patrickmillerlaw.com

Of counsel

James H. Power
Warren E. Gluck
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 513-9010
E-mail: james.power@hklaw.com
E-mail: warren.gluck@hklaw.com
*pro hac vice* pending

**EXHIBIT 1**

# Fight begins over Farenco group assets

Liquidators are said to have uncovered millions of dollars in 'questionable money transfers' after the 2008 market collapse.

Financial sleuths believe they have traced between $31m and $55m-worth of questionable money transfers from one bankrupt unit of China's Farenco group to its still-active sister company, the operator of a seven-ship Singapore-based dry-bulk fleet.

The fight has thus begun in earnest over the fleet and money of the Singapore and Beijing-based Farenco group, which now controls at least seven bulkers from supramax to kamsarmax size.

Investigations by the liquidator, a PriceWaterhouseCooper accountant, and the New York Holland & Knight law firm, representing Farenco entities in liquidation, allegedly show that after the 2008 market collapse, assets were funnelled into one part of the Liu Song-controlled dry-bulk group and trading debts were concentrated in two others, based in the British Virgin Islands (BVI), which were then allowed to collapse.

The liquidators have presented a US bankruptcy court with copiously documented bank transfers, claiming that these confirm previous allegations that Farenco had juggled assets to create a good-company bad-company structure to avoid debts and preserve assets. The massive transfers through other group companies occurred over a period of two years before the Farenco BVI liquidation. This is the so-called "vulnerability period", from which questionable transactions can sometimes be "clawed back" for the benefit of creditors under BVI bankruptcy law.

The information that forms the basis of the liquidator's allegations was generated through the US courts. TradeWinds reported in December that Holland & Knight's James Power had obtained a New York bankruptcy court order allowing the BVI-based liquidator to investigate the affairs of Farenco Shipping Co Ltd (Farenco BVI).

The assets Farenco BVI's liquidators are ultimately targeting are ships operated by Farenco Shipping Pte Ltd (Farenco Singapore), controlled by Beijing businessman Liu. Although Farenco BVI went out of business with forward-freight-agreement (FFA) claims of some $70.3m against it, its Singapore sister continues in operation, as does Beijing-housed Forerunner Shipping, which answers the same phone numbers formerly used by Farenco BVI and describes itself on its website as agent for Farenco Singapore.

In correspondence with bankruptcy lawyers, Liu has said that at the time of its liquidation, Farenco BVI was a mere "shell company" that had been driven out of business by the failure of counterparties including Industrial Carriers Inc, Armada Singapore and Britannia Bulk, leaving it with debts of some $65m.

But Nicholas Francis James Carter, managing director of PriceWaterhouseCoopers BVI, who is Farenco BVI's liquidator and also that of a defunct sister BVI company called Approach Group, hopes to force Farenco Singapore to return payments that Farenco BVI channelled to Farenco Singapore through Approach Group.

Between April 2009 and May 2011, Carter has told the US Southern District of New York (SDNY) bankruptcy court, Farenco BVI transferred some $31.7m from its HSBC bank accounts to Approach Group, allegedly so that the latter could then buy ships for the benefit of other Liu-controlled entities. These transfers were allegedly "undervalue" transactions in the sense of relevant bankruptcy law, and in a sworn statement Carter has told the SDNY court that a BVI court has already considered Farenco BVI's claw-back claim against Advance to have been proved on the evidence.

Further, Carter is investigating some $23.3m in transfers through China Merchants Bank, including $18.7m from Farenco BVI's accounts to those of Approach Group and another $4.65m to Farenco Singapore.

The first assets to have been investigated are the *Ocean Shanghai* (ex- *Fortune Ocean*, built 2006), 76,600-dwt *Ocean Tianjin* (ex- *Fortune Princess*, built 2007), 76,000-dwt *Ocean Qingdao* and *Ocean Dalian* (both built 2011), four of the seven ships listed on Farenco Singapore's website as operated under charter.

Carter believes he has established that the *Ocean Shanghai* and *Ocean Tianjin* were bought with money from Farenco BVI and "were assigned to Farenco Singapore for what on the face of it appears to be a significant undervalue" and also that Farenco Singapore guaranteed the China Merchants Bank loans on the ships.

Carter thinks further discovery is needed on the *Ocean Dalian* and *Ocean Qingdao*. He believes they were acquired with some $71.3m funnelled through Approach Group to purchase newbuilding contracts from Cido Holding Co.

A key to the investigation has been the US "Chapter 15" recognition of the BVI liquidation process, which has allowed extensive discovery. Besides financing documents obtained by the liquidator, the New York law firm of Holland & Knight and its investigators have obtained significant operational information during boardings of the *Ocean Tianjin* in Norfolk, Virginia, in February and of the *Ocean Dalian* in Portland, Oregon, in May.

Besides owned ships, Carter believes Farenco Singapore took over the active charters of some vessels from Farenco BVI for less than fair consideration. These include Cosco Bulk's 74,200-dwt *Yuan Zhi Hai* (built 2005) and Parakou's 46,200-dwt *Great Prestige* (built 1998).

Other vessels listed in Farenco Singapore's operated fleet include the 57,000-dwt *Silvia Ambition* (built 2011) and *Silvia Glory* (built 2012) and the Efploia-owned, 81,000-dwt *Maverick Gunner* (built 2010).

By Bob Rust Beijing

08 August 2012, 06:01

**EXHIBIT 2**

REGISTRAR HIGH COURT COMMERCIAL DIVISION VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
VIRGIN ISLANDS
COMMERCIAL DIVISION

MATTER NUMBERS: 2009/131, 2009/231, 2009/232, 2009/204, 2009/369, 2011/046, 2011/082, 2011/051, 2011/148

IN THE MATTER OF THE INSOLVENCY ACT, 2003

ORIGINAL

AND IN THE MATTER OF:
WEAVERING CAPITAL FUND LTD (2009/131)
GOOD LIFE LIMITED (2009/231)
HAMPTON INSURANCE COMPANY LTD (2009/232)
GVEC RESOURCES IV, INC (2009/204)
GVEC ACQUISITIONS, INC (2009/369)
PALMEX INTERNATIONAL LIMITED (2011/046)
TS MULTI-STRATEGY FUND LIMITED (2011/082)
FARENCO SHIPPING CO., LTD (2011/051)
APPROACH GROUP LIMITED (2011/148)

AND IN THE MATTER OF OFFICE HOLDERS

BETWEEN:

NICHOLAS FRANCIS JAMES CARTER

<u>Applicant</u>

- and -

PHILIP SHADICK (1)
CLIFFORD JOHNSON (2)
VICTOR JONG (3)
ANTHONY BOSWELL (4)

<u>Respondents</u>

---

ORDER

---

BEFORE: Justice The Honourable Edward Bannister Q.C.

MADE: 11th July 2012

ENTERED: 12th July 2012

UPON THE APPLICATION dated 6th July 2012 of Nicholas Francis James Carter being a liquidator of each of the companies set out in the schedule to this order

**AND UPON** the Respondents, being joint liquidators of various of the said companies as set out in the said schedule, having indicated that they are content for this application to be dealt with without a hearing

**AND UPON** the Applicant being due to retire from Pricewaterhouse Coopers (BVI) Limited on 31 July 2012

***AND UPON*** *the Court deciding that the application is suitable to be dealt with without a hearing*

**AND UPON READING** the notice of application dated 6th July 2012, the affidavit of John David Ayres dated 6th July 2012 in support of the application, exhibit JDA-1 and the written submissions of counsel for the Applicant being Mr Jeremy Child of Harney, Westwood & Riegels

**IT IS ORDERED THAT:**

1. John David Ayres be appointed in place of Nicholas Francis James Carter as liquidator or joint liquidator as the case may be of each of the companies in the schedule hereto.

2. The transfer of appointments ordered in paragraph 1 hereof do take effect at noon on 31 July 2012.

BY THE COURT

Deputy REGISTRAR

**Schedule**

| | Court No. | Company Name | Liquidator(s) remaining (if any) |
|---|---|---|---|
| 1. | 2009/131 | Weavering Capital Fund Ltd. | |
| 2. | 2009/231 | Good Life Limited | Philip Shadick |
| 3. | 2009/232 | Hampton Insurance Company Ltd. | Philip Shadick (1)<br>Clifford Johnson (2) |
| 4. | 2009/204 | GVEC Resource IV, Inc. | Anthony Boswell |
| 5. | 2009/369 | GVEC Acquisitions, Inc. | Victor Jong |
| 6. | 2011/046 | Palmex International Limited | |
| 7. | 2011/082 | TS Multi-Stategy Fund Limited | |
| 8. | 2011/051 | Farenco Shipping Co., Ltd. | |
| 9. | 2011/148 | Approach Group Limited | |

**IN THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS**
**COMMERCIAL DIVISION**
**MATTER NUMBERS: 2009/131, 2009/231, 2009/232, 2009/204, 2009/369, 2011/046, 2011/082, 2011/051, 2011/148**
**IN THE MATTER OF THE INSOLVENCY ACT, 2003**
**AND IN THE MATTER OF:**
**WEAVERING CAPITAL FUND LTD (2009/131)**
**GOOD LIFE LIMITED (2009/231)**
**HAMPTON INSURANCE COMPANY LTD (2009/232)**
**GVEC RESOURCES IV, INC (2009/204)**
**GVEC ACQUISITIONS, INC (2009/369)**
**PALMEX INTERNATIONAL LIMITED (2011/046)**
**TS MULTI-STRATEGY FUND LIMITED (2011/082)**
**FARENCO SHIPPING CO., LTD (2011/051)**
**APPROACH GROUP LIMITED (2011/148)**
**AND IN THE MATTER OF OFFICE HOLDERS**

**BETWEEN:**

**NICHOLAS FRANCIS JAMES CARTER**
**Applicant**

**- and -**

**PHILIP SHADICK (1)**
**CLIFFORD JOHNSON (2)**
**VICTOR JONG (3)**
**ANTHONY BOSWELL (4)**
**Respondents**

---

**ORDER**

---

Harney Westwood & Riegels
Craigmuir Chambers
PO Box 71
Road Town, Tortola, VG1110
British Virgin Islands
Tel: 494-2233
Fax: 494-3398
(HWR Ref. No.: AMT/JCC/011444.0020)
**Legal practitioners for the Applicant**

**EXHIBIT 3**

## Creditors' Claim Form

Name of Proceeding: **Farenco Shipping Co., Ltd – in liquidation**

Date of Appointment of Liquidator: 30 May 2011

| | | |
|---|---|---|
| 1 | Name of Creditor | AGRENCO MADEIRA COMERCIO INTERNACIONAL LDA |
| 2 | Address of Creditor | 7 MORE LONDON RIVERSIDE LONDON SE1 2RT |
| 3 | Total amount of claim as at the date of appointment of liquidator | $ 15,957,572-98 |
| 4 | If total amount above includes outstanding uncapitalised interest, please state amount | $ |
| 5 | Give details of whether the whole or any part of the debt falls within any (and if so which) of the categories of preferential debts. | Category<br><br>Amount(s) claimed as preferential $ |
| 6 | Particulars of how and when debt incurred | DEBT ARISES UNDER 3 FORWARD FREIGHT SWAP AGREEMENTS AS SET OUT IN THE ATTACHED STATUTORY DEMAND. |
| 7 | Details of any documents by reference to which the debt can be substantiated. | STATUTORY DEMAND DATED 21 MARCH 2011. |
| 8 | Particulars of any security held, the date it was given and the value of the security | — |
| 9 | Signature of creditor or person authorized to act on his behalf<br><br>Name in BLOCK LETTERS<br><br>Position with or relation to creditor<br><br>Address | : [signature]<br><br>: RUSSELL DOWNS<br><br>: JOINT LIQUIDATOR<br><br>: 7 MORE LONDON RIVERSIDE LONDON SE1 2RT |

# STATUTORY DEMAND

## (Pursuant to Section 155(1) of the Insolvency Act 2003)

**Agrenco Madeira Comercio Internacional LDA (in liquidation)** of Avendia do Infante, 50 Funchal, 9004-521 Ihla da Maderia, Portugal (**"the Creditor"**), demands that **Farenco Shipping Co Ltd. BVI** having its registered office at Commonwealth Trust Limited. PO Box 3321, Road Town, Tortola, British Virgin Islands, (**"the Debtor"**), a limited company incorporated under the laws of the British Virgin Islands, pay the total amount of the debt listed below:

| Debt(s) | Nature of Debt |
|---|---|
| 1. US $15,957,572.98 | On or about 27 May 2008, 4 June 2008 and 17 June 2008 the Creditor entered into three Forward Freight Swap Agreements numbered 08052701 AGMFAR, 0860403 AGMFAR and 08061704 AGMFAR ("FFAs" or "the Agreements", attached hereto as Document A), with the Debtor, each of which was governed by the terms of the Forward Freight Agreement Brokers Association 2007 ("2007 FFABA") incorporating the terms of the ISDA 1992 Multi-currency-Cross Border Master Agreement ("the Master Agreement"), both of which are attached as Document B.<br><br>On or about 28 October 2009, the Creditor was placed in compulsory liquidation. This constituted an Event of Default under Section 5(a)(vii)(5) of the Master Agreement.<br><br>By reason of the Event of Default and Clause 9(f) of 2007 FFABA, the Agreements terminated automatically upon the 'Early Termination Date' as defined by 2007 FFABA.<br><br>Upon such automatic early termination and by Section 6(d)(i) of the Master Agreement, calculations of sums due under the Agreements were required to be made by both parties in accordance with the method prescribed by Clause 9(e) of 2007 FFABA. The list of calculations is attached as Document C. |

On or about 3 December 2009 the Creditor gave written notice of the calculated amount ("the Claimed Amount") to the Debtor ("the Notice") by sending the Notice and a covering letter by courier and email to the Debtor. Receipt of the Notice was acknowledged by the Debtor on 7 December 2009 and the Notice therefore became effective on 7 December 2009 pursuant to Section 12(a) of the Master Agreement. Copies of the Notice, letter, email and receipt are attached as Document D.

The Claimed Amount became due and payable by the Debtor on the date that the Notice became effective, namely 7 December 2009 and request had been made by the Creditor for payment thereof within 7 days from the date of receipt of the Notice.

The Debtor has failed and/or refused to pay any or all of the Claimed Amount in time or at all.

The total sum due and owing is US$15,957,572.98.

A copy of the documents relied upon by the Creditor and referred to hereinabove are attached to this Statutory Demand.

The total amount of the debt is US $15,957,572.98 (**"the Debt"**).

Therefore the amount of **US$15,957,572.98** is hereby demanded.

The Debtor is required to pay the Debt or to secure or compound for it to the reasonable satisfaction of the Creditor within twenty one (21) days of service of this statutory demand.

If this Statutory Demand is not complied with within this time period, the Creditor will be entitled to make an application to the Court for the appointment of a liquidator over the Debtor.

Section 156 of the Insolvency Act 2003 provides as follows:

(1) Where a person has been served with a statutory demand he may apply to the Court to set it aside.

(2) An application under subsection (1) shall be made within fourteen days (14) of the date of service of the demand on him.

(3) The Court may not extend the time for making or serving an application to set aside a statutory demand.

(4) Subject to an order of the Court under section 157, the time for compliance with the demand ceases to run as from the date upon which an application under subsection (1) is filed with the Court.

(5) A person applying to set aside a statutory demand under this section shall give seven days notice of the hearing to the creditor or, where a person is named in the demand as the person with whom communications in respect of the demand should be made, to that person.

PLEASE NOTE THAT THIS STATUTORY DEMAND CONSISTS OF THREE PAGES AND HAS FOUR DOCUMENTS ATTACHED.

Dated: 21 March 2011

Signed:

**For and on behalf of Ogier**
Legal Practitioners authorised to make this Statutory Demand on behalf of the Creditor.

The Debtor should contact the following persons at the following address with a view to securing or compounding for the Debt to the satisfaction of the Creditor: Clare-Louise Whiley / Ray Ng of Ogier, Qwomar Complex 4th floor, PO Box 3170 Road Town, Tortola, British Virgin Islands. Telephone number: +1 (284) 494 0525. Fax number: +1 (284) 494 0883. Ref: MJF/RHN/CLW 141326.00013.

**ACKNOWLEDGMENT OF SERVICE**

Served on: **Farenco Shipping Co Ltd. BVI**

Date: 21 March 2011

Time: 11.40 am

Served by: Sheldon Matthew

Received by (print name): Clive Gibbons

Signed:

# EXHIBIT 4

## Creditors' Claim Form

Name of Proceeding: **Farenco Shipping Co., Ltd – in liquidation**

Date of Appointment of Liquidator: 30 May 2011

| | | |
|---|---|---|
| 1 | Name of Creditor | PIONEER FREIGHT FUTURES COMPANY LIMITED - IN LIQUIDATION |
| 2 | Address of Creditor | GRANT THORNTON UK LLP 30 FINSBURY SQUARE, LONDON, EC2P 2YU, UK |
| 3 | Total amount of claim as at the date of appointment of liquidator | $ 53,233,664.89 |
| 4 | If total amount above includes outstanding uncapitalised interest, please state amount | $ |
| 5 | Give details of whether the whole or any part of the debt falls within any (and if so which) of the categories of preferential debts. | Category<br><br>Amount(s) claimed as preferential $ |
| 6 | Particulars of how and when debt incurred | FFA. CONTRACTS ENTERED INTO IN 2008/2009. |
| 7 | Details of any documents by reference to which the debt can be substantiated. | ATTACHED INVOICE |
| 8 | Particulars of any security held, the date it was given and the value of the security | |
| 9 | Signature of creditor or person authorized to act on his behalf<br><br>Name in BLOCK LETTERS<br><br>Position with or relation to creditor<br><br>Address | : [signature]<br><br>: MARK BYERS<br><br>: JOINT LIQUIDATOR<br><br>: GRANT THORNTON UK LLP, 30 FINSBURY SQUARE, LONDON, EC2P 2YU, UK |

# Pioneer Freight Futures Company Limited - In Liquidation

## INVOICE

DATE: 18 March 2010
INVOICE NO: PFF/DF09/12
COUNTERPARTY: FARENCO SHIPPING CO. LTD.BVI
DUE IN FULL BY: 18 March 2010

| Trade Date | Quantity (MT/DAY) | Instrument | Broker | Tenor | Contract Rate | Settlement Rate | Due from/(to) Counterparty | C(closed value)/T/AET value) |
|---|---|---|---|---|---|---|---|---|
| 28/08/2008 | -15.5 | C4TC | FIS | Oct-08 | $147,550.00 | $19,518.75 | $1,984,615.38 | C |
| 30/01/2008 | 31 | PM4TC | SSY | Oct-08 | $53,500.00 | $11,429.84 | ($1,384,176.87) | C |
| 26/02/2008 | 31 | PM4TC | Bancosta(Monaco) | Oct-08 | $65,000.00 | $11,429.84 | ($1,660,673.87) | C |
| 03/04/2008 | 31 | PM4TC | FIS | Oct-08 | $63,500.00 | $11,429.54 | ($1,614,110.67) | C |
| 27/05/2008 | -31 | PM4TC | FIS | Oct-08 | $76,250.00 | $11,429.86 | $1,974,620.67 | C |
| 18/04/2008 | 31 | SPM5TC | FIS | Oct-08 | $54,725.00 | $14,587.03 | ($1,244,277.00) | C |
| 28/08/2008 | -15 | C4TC | FIS | Nov-08 | $147,550.00 | $3,994.94 | $2,153,325.84 | C |
| 30/01/2008 | 30 | PM4TC | SSY | Nov-08 | $53,500.00 | $6,736.06 | ($1,402,914.12) | C |
| 26/02/2008 | 30 | PM4TC | Bancosta(Monaco) | Nov-08 | $65,000.00 | $6,738.06 | ($1,747,918.12) | C |
| 03/04/2008 | 30 | PM4TC | FIS | Nov-08 | $63,500.00 | $6,738.06 | ($1,702,918.12) | C |
| 27/05/2008 | -30 | PM4TC | FIS | Nov-08 | $76,250.00 | $6,738.06 | $2,085,418.13 | C |
| 18/04/2008 | 30 | SPM5TC | FIS | Nov-08 | $54,725.00 | $8,030.53 | ($1,400,654.04) | C |
| 28/08/2008 | -15.5 | C4TC | FIS | Dec-08 | $147,550.00 | $6,498.43 | $2,186,250.38 | C |
| 30/01/2008 | 31 | PM4TC | SSY | Dec-08 | $53,500.00 | $4,139.60 | ($1,530,172.40) | C |
| 26/02/2008 | 31 | PM4TC | Bancosta(Monaco) | Dec-08 | $66,000.00 | $4,139.60 | ($1,896,072.40) | C |
| 03/04/2008 | 31 | PM4TC | FIS | Dec-08 | $63,500.00 | $4,139.60 | ($1,840,177.40) | C |
| 27/05/2008 | -31 | PM4TC | FIS | Dec-08 | $76,250.00 | $4,139.60 | $2,204,432.49 | C |
| 18/05/2008 | 31 | SPM5TC | FIS | Dec-08 | $54,725.00 | $5,280.50 | ($1,532,459.50) | C |
| 05/06/2008 | -31 | C4TC | FIS | Jan-09 | $128,000.00 | $14,377.33 | $3,522,302.77 | C |
| 11/06/2008 | -31 | C4TC | FIS | Jan-09 | $120,750.00 | $14,377.33 | $3,297,552.67 | C |
| 20/06/2008 | 15.5 | PM4TC | FIS | Jan-09 | $64,400.00 | $4,307.64 | ($930,036.20) | C |
| 24/07/2008 | -15.5 | PM4TC | SSY | Jan-09 | $62,500.00 | $4,307.54 | $900,846.20 | C |
| 08/08/2008 | -15.5 | PM4TC | FIS | Jan-09 | $58,000.00 | $4,307.64 | $830,836.20 | C |
| 14/08/2008 | 15 | C4TC | SSY | Jan-09 | $132,500.00 | $14,377.33 | ($1,771,840.05) | C |
| 02/09/2008 | 15.5 | C4TC | Bancosta(Monaco) | Jan-09 | $112,000.00 | $14,377.33 | ($1,513,151.35) | C |
| 09/09/2008 | -15.5 | C4TC | FIS | Jan-09 | $85,250.00 | $14,377.33 | $1,098,526.39 | C |
| 10/09/2008 | 15.5 | PM4TC | SSY | Jan-09 | $41,175.00 | $4,307.54 | ($570,050.79) | C |
| 11/09/2008 | 15.5 | C4TC | FIS | Jan-09 | $81,500.00 | $14,377.33 | ($1,040,401.39) | C |
| 23/09/2008 | -15.5 | C4TC | Bancosta(Monaco) | Jan-09 | $71,250.00 | $14,377.33 | $881,526.39 | C |
| 24/09/2008 | -15 | PM4TC | FIS | Jan-09 | $36,250.00 | $4,307.64 | $477,706.94 | C |
| 05/06/2008 | -28 | C4TC | FIS | Feb-09 | $128,000.00 | $31,878.43 | $2,688,503.80 | C |
| 11/06/2008 | -28 | C4TC | FIS | Feb-09 | $120,750.00 | $31,878.43 | $2,488,602.80 | C |
| 20/06/2008 | 14 | PM4TC | FIS | Feb-09 | $64,400.00 | $10,662.35 | ($752,327.10) | C |
| 24/07/2008 | -14 | PM4TC | SSY | Feb-09 | $62,500.00 | $10,662.35 | $725,727.10 | C |
| 08/08/2008 | -14 | PM4TC | FIS | Feb-09 | $58,000.00 | $10,662.35 | $662,727.10 | C |
| 14/08/2008 | 15 | C4TC | SSY | Feb-09 | $132,500.00 | $31,878.43 | ($1,509,817.83) | C |
| 02/09/2008 | 14 | C4TC | Bancosta(Monaco) | Feb-09 | $112,000.00 | $31,878.43 | ($1,100,298.48) | C |
| 09/09/2008 | -14 | C4TC | FIS | Feb-09 | $85,250.00 | $31,878.40 | $745,796.45 | C |
| 10/09/2008 | 14 | PM4TC | SSY | Feb-09 | $41,175.00 | $10,662.35 | ($427,177.10) | C |
| 11/09/2008 | 14 | C4TC | FIS | Feb-09 | $81,500.00 | $31,878.43 | ($655,298.48) | C |
| 23/09/2008 | -14 | C4TC | Bancosta(Monaco) | Feb-09 | $71,250.00 | $31,878.43 | $549,700.45 | C |
| 24/09/2008 | -15 | PM4TC | FIS | Feb-09 | $36,250.00 | $10,662.35 | $383,814.75 | C |
| 05/06/2008 | -31 | C4TC | FIS | Mar-09 | $128,000.00 | $23,267.90 | $3,248,696.17 | C |
| 11/06/2008 | -31 | C4TC | FIS | Mar-09 | $120,750.00 | $23,267.90 | $3,021,946.17 | C |
| 20/06/2008 | 15.5 | PM4TC | FIS | Mar-09 | $64,400.00 | $14,610.72 | ($771,738.80) | C |
| 24/07/2008 | -15.5 | PM4TC | SSY | Mar-09 | $62,500.00 | $14,610.72 | $742,288.60 | C |
| 08/08/2008 | -15.5 | PM4TC | FIS | Mar-09 | $58,000.00 | $14,610.72 | $672,533.90 | C |
| 14/08/2008 | 16 | C4TC | SSY | Mar-09 | $132,500.00 | $23,267.90 | ($1,518,431.53) | C |
| 02/09/2008 | 15.5 | C4TC | Bancosta(Monaco) | Mar-09 | $112,000.00 | $23,267.90 | ($1,375,347.69) | C |
| 09/09/2008 | -15.5 | C4TC | FIS | Mar-09 | $85,350.00 | $23,267.90 | $960,722.50 | C |
| 10/09/2008 | 15.5 | PM4TC | SSY | Mar-09 | $41,175.00 | $14,610.72 | ($411,748.40) | C |
| 11/09/2008 | 15.5 | C4TC | FIS | Mar-09 | $81,500.00 | $23,267.90 | ($902,607.40) | C |
| 23/09/2008 | -15.5 | C4TC | Bancosta(Monaco) | Mar-09 | $71,250.00 | $23,267.90 | $743,722.50 | C |
| 24/09/2008 | -15 | PM4TC | FIS | Mar-09 | $36,750.00 | $14,610.72 | $324,588.28 | C |
| 05/06/2008 | -30 | C4TC | FIS | Apr-09 | $128,000.00 | $19,982.00 | $3,240,537.30 | C |
| 11/06/2008 | -30 | C4TC | FIS | Apr-09 | $120,750.00 | $19,982.00 | $3,023,037.30 | C |
| 20/06/2008 | 16 | PM4TC | FIS | Apr-09 | $64,400.00 | $11,302.43 | ($796,463.63) | C |
| 24/07/2008 | -15 | PM4TC | SSY | Apr-09 | $62,500.00 | $11,302.43 | $767,963.65 | C |
| 08/08/2008 | -15 | PM4TC | FIS | Apr-09 | $58,000.00 | $11,302.43 | $700,463.63 | C |
| 14/08/2008 | 15 | C4TC | SSY | Apr-09 | $132,500.00 | $19,982.00 | ($1,667,766.69) | C |
| 02/09/2008 | 15 | C4TC | Bancosta(Monaco) | Apr-09 | $117,000.00 | $19,982.00 | ($1,380,268.69) | C |
| 09/09/2008 | -15 | C4TC | FIS | Apr-09 | $85,250.00 | $19,982.00 | $978,018.50 | C |
| 10/09/2008 | 15 | PM4TC | SSY | Apr-09 | $41,175.00 | $11,302.43 | ($448,088.63) | C |
| 11/09/2008 | 15 | C4TC | FIS | Apr-09 | $81,500.00 | $19,982.00 | ($922,768.50) | C |
| 23/09/2008 | -15 | C4TC | Bancosta(Monaco) | Apr-09 | $71,250.00 | $19,982.00 | $769,018.50 | C |
| 05/06/2008 | -31 | C4TC | FIS | May-09 | $128,000.00 | $37,485.45 | $2,805,931.13 | C |
| 11/06/2008 | -31 | C4TC | FIS | May-09 | $120,750.00 | $37,485.45 | $2,581,201.13 | C |
| 20/06/2008 | 15.5 | PM4TC | FIS | May-09 | $64,400.00 | $18,382.78 | ($713,676.97) | C |
| 24/07/2008 | -15.5 | PM4TC | SSY | May-09 | $62,500.00 | $18,382.78 | $684,126.97 | C |
| 08/08/2008 | -15.5 | PM4TC | FIS | May-09 | $58,000.00 | $18,382.78 | $614,376.97 | C |
| 14/08/2008 | 16 | C4TC | SSY | May-09 | $132,500.00 | $37,485.45 | ($1,425,216.25) | C |
| 02/09/2008 | 15.5 | C4TC | Bancosta(Monaco) | May-09 | $112,000.00 | $37,485.45 | ($1,154,976.57) | C |
| 09/09/2008 | -15.5 | C4TC | FIS | May-09 | $85,250.00 | $37,485.45 | $740,350.57 | C |
| 10/09/2008 | 15.5 | PM4TC | SSY | May-09 | $41,175.00 | $18,382.78 | ($353,580.47) | C |
| 11/09/2008 | 15.5 | C4TC | FIS | May-09 | $81,500.00 | $37,485.45 | ($682,225.57) | C |
| 22/09/2008 | -15.5 | C4TC | Bancosta(Monaco) | May-09 | $71,250.00 | $37,485.45 | $523,350.57 | C |
| 05/06/2008 | -30 | C4TC | FIS | June-09 | $128,000.00 | $80,846.16 | $1,414,615.32 | C |
| 11/06/2008 | -30 | C4TC | FIS | June-09 | $120,750.00 | $80,846.16 | $1,197,115.33 | C |
| 20/06/2008 | 15 | PM4TC | FIS | June-09 | $64,400.00 | $24,189.88 | ($603,154.77) | C |
| 24/07/2008 | -15 | PM4TC | SSY | June-09 | $62,500.00 | $24,189.88 | $574,654.77 | C |
| 08/08/2008 | -15 | PM4TC | FIS | June-09 | $58,000.00 | $24,189.88 | $507,154.77 | C |
| 14/08/2008 | 15 | C4TC | SSY | June-09 | $132,500.00 | $80,846.16 | ($774,807.61) | C |
| 02/09/2008 | 15 | C4TC | Bancosta(Monaco) | June-09 | $112,000.00 | $80,846.16 | ($467,307.61) | C |

# Pioneer Freight Futures Company Limited - In Liquidation

## INVOICE

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 09/09/2008 | -15 | CS4TC | FIS | June-09 | $85,250.00 | $40,848.10 | $88,057.81 | C |
| 10/09/2008 | 15 | PM4TC | SSY | June-09 | $41,175.00 | $24,188.68 | ($764,770.77) | C |
| 11/09/2008 | 15 | CS4TC | FIS | June-09 | $81,500.00 | $40,848.10 | ($9,607.61) | C |
| 22/09/2008 | -15 | CS4TC | Bancosta(Monaco) | June-09 | $71,250.00 | $40,848.10 | ($143,942.30) | C |
| 05/09/2008 | -31 | CS4TC | FIS | July-09 | $124,000.00 | $80,852.28 | $2,031,878.24 | C |
| 11/09/2008 | -31 | CS4TC | FIS | July-09 | $120,750.00 | $80,852.28 | $1,834,929.24 | C |
| 14/09/2008 | 16 | CS4TC | SSY | July-09 | $130,500.00 | $80,852.28 | ($1,674,715.74) | C |
| 02/09/2008 | 15.5 | CS4TC | Bancosta(Monaco) | July-09 | $112,000.00 | $80,852.28 | ($792,709.62) | C |
| 09/09/2008 | -15.5 | CS4TC | FIS | July-09 | $85,250.00 | $80,852.28 | $378,164.82 | C |
| 11/09/2008 | 15.5 | CS4TC | FIS | July-09 | $81,500.00 | $80,852.28 | ($320,096.62) | C |
| 22/09/2008 | -15.5 | CS4TC | Bancosta(Monaco) | July-09 | $71,250.00 | $80,852.28 | $361,104.62 | C |
| 26/09/2008 | 15.5 | PM4TC | FIS | July-09 | $64,400.00 | $25,570.65 | ($604,904.80) | C |
| 24/07/2008 | -15.5 | PM4TC | SSY | July-09 | $62,500.00 | $25,570.65 | $592,404.69 | C |
| 08/09/2008 | -15.5 | PM4TC | FIS | July-09 | $56,000.00 | $25,570.65 | $502,854.69 | C |
| 10/09/2008 | 15.5 | PM4TC | SSY | July-09 | $41,175.00 | $25,570.65 | ($241,867.37) | C |
| 05/09/2008 | -31 | CS4TC | FIS | Aug-09 | $128,000.00 | $44,241.44 | $2,596,515.44 | C |
| 11/09/2008 | -31 | CS4TC | FIS | Aug-09 | $120,750.00 | $44,241.44 | $2,371,765.44 | C |
| 14/09/2008 | 15 | CS4TC | SSY | Aug-09 | $132,500.00 | $44,241.44 | ($1,323,678.44) | C |
| 02/09/2008 | 15.5 | CS4TC | Bancosta(Monaco) | Aug-09 | $117,000.00 | $44,241.44 | ($1,050,257.72) | C |
| 09/09/2008 | -15.5 | CS4TC | FIS | Aug-09 | $86,250.00 | $44,241.44 | $630,632.72 | C |
| 11/09/2008 | 15.5 | CS4TC | FIS | Aug-09 | $81,500.00 | $44,241.44 | ($577,307.72) | C |
| 22/09/2008 | -15.5 | CS4TC | Bancosta(Monaco) | Aug-09 | $71,250.00 | $44,241.44 | $418,832.72 | C |
| 26/09/2008 | 15.5 | PM4TC | FIS | Aug-09 | $64,400.00 | $19,556.40 | ($696,021.30) | C |
| 24/07/2008 | -15.5 | PM4TC | SSY | Aug-09 | $62,500.00 | $19,556.40 | $665,641.30 | C |
| 05/09/2008 | -15.5 | PM4TC | FIS | Aug-09 | $56,000.00 | $19,556.40 | $565,664.30 | C |
| 10/09/2008 | 15.5 | PM4TC | SSY | Aug-09 | $41,175.00 | $19,556.40 | ($335,102.80) | C |
| 05/09/2008 | -30 | CS4TC | FIS | Sep-09 | $120,000.00 | $39,918.85 | $2,342,434.43 | C |
| 11/09/2008 | -30 | CS4TC | FIS | Sep-09 | $120,750.00 | $39,918.85 | $2,724,934.43 | C |
| 14/09/2008 | 15 | CS4TC | SSY | Sep-09 | $132,500.00 | $39,918.85 | ($1,534,717.22) | C |
| 02/09/2008 | 15 | CS4TC | Bancosta(Monaco) | Sep-09 | $112,000.00 | $39,918.85 | ($1,231,217.22) | C |
| 09/09/2008 | -15 | CS4TC | FIS | Sep-09 | $85,250.00 | $39,918.85 | $629,987.22 | C |
| 11/09/2008 | 15 | CS4TC | FIS | Sep-09 | $81,000.00 | $39,918.85 | ($773,717.22) | C |
| 22/09/2008 | -15 | CS4TC | Bancosta(Monaco) | Sep-09 | $71,250.00 | $39,918.85 | $619,987.22 | C |
| 26/09/2008 | 16 | PM4TC | FIS | Sep-09 | $64,400.00 | $18,717.19 | ($770,342.10) | C |
| 24/07/2008 | -15 | PM4TC | SSY | Sep-09 | $62,500.00 | $18,717.19 | $641,742.00 | C |
| 08/09/2008 | -15 | PM4TC | FIS | Sep-09 | $56,000.00 | $18,717.19 | $574,242.90 | C |
| 10/09/2008 | 15 | PM4TC | SSY | Sep-09 | $41,175.00 | $18,717.19 | ($321,857.10) | C |
| 05/09/2008 | -31 | CS4TC | FIS | Oct-09 | $129,000.00 | $41,698.48 | $2,690,426.20 | C |
| 11/09/2008 | -31 | CS4TC | FIS | Oct-09 | $120,750.00 | $41,698.48 | $2,444,876.20 | C |
| 14/09/2008 | 15 | CS4TC | SSY | Oct-09 | $132,000.00 | $41,698.48 | ($1,355,157.84) | C |
| 02/09/2008 | 15.5 | CS4TC | Bancosta(Monaco) | Oct-09 | $117,000.00 | $41,698.48 | ($1,096,713.10) | C |
| 09/09/2008 | -15.5 | CS4TC | FIS | Oct-09 | $85,250.00 | $41,698.48 | $672,059.10 | C |
| 11/09/2008 | 15.5 | CS4TC | FIS | Oct-09 | $81,500.00 | $41,698.48 | ($616,962.10) | C |
| 22/09/2008 | -15.5 | CS4TC | Bancosta(Monaco) | Oct-09 | $71,250.00 | $41,698.48 | $459,066.10 | C |
| 26/09/2008 | 15.5 | PM4TC | FIS | Oct-09 | $64,400.00 | $22,242.27 | ($653,444.77) | C |
| 24/07/2008 | -15.5 | PM4TC | SSY | Oct-09 | $62,500.00 | $22,242.27 | $624,004.77 | C |
| 08/09/2008 | -15.5 | PM4TC | FIS | Oct-09 | $56,000.00 | $22,242.27 | $524,244.77 | C |
| 10/09/2008 | 15.5 | PM4TC | SSY | Oct-09 | $41,175.00 | $22,242.27 | ($293,167.87) | C |
| 05/09/2008 | -30 | CS4TC | FIS | Nov-09 | $129,000.00 | $70,250.50 | $1,791,585.00 | C |
| 11/09/2008 | -30 | CS4TC | FIS | Nov-09 | $120,750.00 | $70,280.50 | $1,514,085.00 | C |
| 14/09/2008 | 15 | CS4TC | SSY | Nov-09 | $130,600.00 | $70,280.50 | ($903,292.50) | C |
| 02/09/2008 | 15 | CS4TC | Bancosta(Monaco) | Nov-09 | $112,000.00 | $70,280.50 | ($625,792.50) | C |
| 09/09/2008 | -15 | CS4TC | FIS | Nov-09 | $85,250.00 | $70,280.50 | $224,540.50 | C |
| 11/09/2008 | 15 | CS4TC | FIS | Nov-09 | $81,500.00 | $70,280.50 | ($168,792.50) | C |
| 22/09/2008 | -15 | CS4TC | Bancosta(Monaco) | Nov-09 | $71,250.00 | $70,280.50 | $14,542.50 | C |
| 26/09/2008 | 15 | PM4TC | FIS | Nov-09 | $64,400.00 | $31,334.56 | ($495,981.67) | C |
| 24/07/2008 | -15 | PM4TC | SSY | Nov-09 | $62,500.00 | $31,334.56 | $467,481.61 | C |
| 08/09/2008 | -15 | PM4TC | FIS | Nov-09 | $56,000.00 | $31,334.56 | $369,981.61 | C |
| 10/09/2008 | 15 | PM4TC | SSY | Nov-09 | $41,175.00 | $31,334.56 | ($147,908.61) | C |
| 05/09/2008 | -31 | CS4TC | FIS | Dec-09 | $124,000.00 | $57,800.00 | $2,173,100.00 | T |
| 11/09/2008 | -31 | CS4TC | FIS | Dec-09 | $120,750.00 | $57,300.00 | $1,846,350.00 | T |
| 14/09/2008 | 15 | CS4TC | SSY | Dec-09 | $132,500.00 | $57,800.00 | ($1,118,850.00) | T |
| 02/09/2008 | 15.5 | CS4TC | Bancosta(Monaco) | Dec-09 | $112,000.00 | $57,800.00 | ($838,650.00) | T |
| 09/09/2008 | -15.5 | CS4TC | FIS | Dec-09 | $84,250.00 | $57,800.00 | $422,525.00 | T |
| 11/09/2008 | 15.5 | CS4TC | FIS | Dec-09 | $81,500.00 | $57,800.00 | ($366,800.00) | T |
| 22/09/2008 | -15.5 | CS4TC | Bancosta(Monaco) | Dec-09 | $71,250.00 | $57,400.00 | $206,925.00 | T |
| 26/09/2008 | 15.5 | PM4TC | FIS | Dec-09 | $64,400.00 | $29,160.00 | ($546,220.00) | T |
| 24/07/2008 | -15.5 | PM4TC | SSY | Dec-09 | $62,500.00 | $29,160.00 | $516,770.00 | T |
| 08/09/2008 | -15.5 | PM4TC | FIS | Dec-09 | $58,000.00 | $29,160.00 | $447,020.00 | T |
| 10/09/2008 | 15.5 | PM4TC | SSY | Dec-09 | $41,175.00 | $29,160.00 | ($186,232.50) | T |
| 24/09/2008 | -180 | CS4TC | FIS | Cal 10 | $86,000.00 | $32,150.00 | $9,684,350.00 | T |
| 27/09/2008 | -365 | PM4TC | FIS | Cal 10 | $44,850.00 | $19,750.00 | $9,230,950.00 | T |
| | | | | | | Total | $83,733,884.89 | |

| Payment Instructions: | |
|---|---|
| OPENING BANK: | Barclays Bank plc |
| SWIFT CODE: | BARCGB22 |
| ACCOUNT NUMBER: | 69459066 |
| ACCOUNT NAME: | A Hosking and M Byers, Joint Provisional Liquidators of Pioneer Freight Futures Company Limited |
| IBAN: | GB53 BARC 2037 7569 4559 66 |

Pioneer Freight Futures Company Limited - in Liquidation
If you have any questions regarding this settlement, please contact Pioneer Freight Futures Company Limited - in Liquidation, courtesy of Grant Thornton UK LLP
Telephone: +44 (0)20 7865 2337
Email: napier.munro-faure@gtuk.com
Grant Thornton UK LLP, 30 Finsbury Square, London EC2P 2YU