UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FARENCO SHIPPING CO LTD.<br><br>VERSUS<br><br>FARENCO SHIPPING PTE LTD., OCEAN GREAT INDUSTRIAL LTD., TEAMZONE LTD., and LIU SONG | CIVIL ACTION<br><br>NUMBER:  12-2544<br><br>SECTION:  "A" – (2)<br><br>JUDGE:<br>JAY C. ZAINEY<br><br>MAGISTRATE JUDGE:<br>JOSEPH C. WILKINSON, JR |

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE ATTACHMENT AND/OR TO DISMISS FOR LACK OF JURISDICTION OR, ALTERNATIVELY, TO SET SECURITY**

MAY IT PLEASE THE COURT:

### I. Introduction

The M/V OCEAN SHANGHAI is currently under attachment pursuant to an order issued from this Court October 18, 2012. The attachment was based in principal part on Rule B of the Supplemental Rules for Admiralty or Maritime Claims. Pursuant to Rule E(4) of those Rules, the owner of the vessel, Ocean Great Industrial Ltd., respectfully requests the Court schedule an expedited hearing at which, in the words of the Rule, "the plaintiff shall be required to show why the… attachment should not be vacated..."

The attachment is invalid on several grounds. First, the court lacks subject matter jurisdiction insofar as the claims which are the subject of the verified complaint are not maritime in nature. Attachment pursuant to Rule B is therefore unavailable as a matter of law.

1

Second, the plaintiff has caused the attachment of the property of Great Ocean even though the plaintiff's underlying claims are against a completely different entity which has no ownership or other interest in the vessel.

Third, the requirements of the due process clause as applied by the Supreme Court in *Schaffer v. Heitner, 433 U.S. 186 (1997)* are not met because the claims have no connection to the U.S. or Louisiana and due to the absence of jurisdictional contacts between the attached vessel and the vessel owner on one hand, and the state of Louisiana on the other.

Finally, and in the alternative, if the Court upholds the validity of the attachment then Ocean Great moves the Court to set the amount of the security to be posted to obtain release of the vessel at $900,000.00, being the difference between the current market value of the vessel and the outstanding balance of the ship mortgage.

## II.   Background

The plaintiff in this case, Farenco Shipping Co. Ltd., ("Farenco BVI")[1] is currently in liquidation in the British Virgin Islands (the "BVI"). Its action in this Court seeks to litigate in New Orleans, with the benefit of U.S. preliminary remedies and discovery procedures, various "foreign law avoidance claims."[2] These claims are based on alleged corporate improprieties in the handling of Farenco BVI's affairs.  As the complaint ultimately recognizes, BVI's laws regarding corporate relations and insolvency are the "fundamental principle … which underlies

---

[1] To avoid confusion and to be consistent with the usage in the body of the complaint, plaintiff will henceforth be referred to as Farenco BVI.
[2] See plaintiff's Memorandum in Support of Motion for Order Directing the Issuance of the Process of Attachment, page 2.

the claims as a whole.". (Complaint ¶ 111). None of the relevant events or transactions took place in this country and none of the pertinent witnesses or evidence are located here.

This dispute also concerns the financial effects of a relatively modern species of financial instrument called a Forward Freight Agreement, or FFA. An FFA is a contract between two parties which relates to the future fluctuation in an agreed market-based index that tracks the "freight" rates in a designated market segment. An FFA does not relate to or even identify a specific vessel or vessels, and does not involve the carriage of goods. It is simply a financial instrument in which, similar to a traditional stock option, both sides speculate on what future market conditions will be. Here, the plaintiff was a party to various winning and losing FFAs. Under a few of those contracts it allegedly became obliged to pay significant sums to its contractual counterparties.[3] It is important to emphasize that the owner of the vessel currently under attachment was not a party to any of these FFAs and has no involvement in the underlying dispute between the contracting parties.

### III. Law and Argument

#### a. The Court lacks subject matter jurisdiction

Although the jurisdictional allegations of the complaint are not entirely clear, plaintiff appears to claim subject matter jurisdiction on three separate grounds:

1. The alleged admiralty and maritime nature of the claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure;

---

[3] Exemplary copies of these FFAs are attached to the Sachs Declaration (Exhibit A). As the Court will note, both contracts are governed by English law and are subject to the exclusive jurisdiction of the High Court of Justice in London, England.

2. Chapter 15 of the U.S. Bankruptcy Code, specifically 11 U.S.C. §1509; and

3. The Louisiana Non-Resident Attachment Statute, La. Code of Civil Procedure, Article 3541(5).

None of these jurisdictional claims is sustainable.

### i. Rule B attachments are available only as to claims within the Court's admiralty and maritime jurisdiction.

Federal Rule of Civil Procedure 12(b) governs challenges to a court's subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *Stockman v. Federal Election Comm'n*, 138 F.3d 183, 186 (5th Cir. 2010).

A prerequisite for attachment under Supplemental Admiralty Rule B is that the underlying claim be cognizable in admiralty. *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 (5th Cir. 2010). The question of whether an underlying claim is within the court's admiralty jurisdiction focuses on the nature of the underlying transaction or the underlying contracts. *Id.*

The plaintiff's claims in this case are explicitly based upon BVI insolvency law and are predicated on theories of alter ego liability and piercing the corporate veil. Under long-established United States law, such claims are not within the court's admiralty jurisdiction or

entitled to a maritime attachment under Supplemental Admiralty Rule B. Significantly, most creditor-based insolvency claims do not qualify as maritime and will not support a Rule B attachment. *See e.g., Yone Suzuki v. Central Argentine Ry.*, 27 F. 2d 795, 807 (2d Cir. 1928) ("The liability of Gano Moore Coal-Mining Company must depend upon the extent of the value, if any, of the property transferred to it. We are referred to no case where a remedy to reach and apply assets, ordinarily afforded only by a creditors' bill, has been applied by a court of admiralty. It seems quite foreign to its jurisdiction, and we hold that such relief cannot properly be granted in this suit.") (citation omitted); *Representaciones Y Distribuciones Enya S.A. de C.V. v. Global Explorer LLC,* No. 09 Civ. 6060, 2009 WL 3346593, at *3 (S.D.N.Y. Oct. 16, 2009) (Rule B attachment not permitted for an improper winding-up claim because it "is not a maritime claim").

In addition, there is no maritime jurisdiction to try claims for alleged avoidable transfers, unless those transfers occurred because of a prior maritime attachment/action. *See Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 248 (2d Cir. 1987) ("Having never invoked the jurisdiction of an admiralty court over any primary admiralty claim, Atlanta cannot now invoke admiralty jurisdiction against a third party over the derivative claim of an alleged fraudulent transfer.").

Plaintiff's corporate veil-piercing and alter ego liability theories are also not viable maritime claims against later formed companies and, therefore, do not provide a proper basis for a Rule B attachment. *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 689 n.4 (1950) (The new owner of a vessel, which had been attached to secure a cargo

damage claim against the former owner of the vessel, "could not be held personally liable on an alter ego theory, since it came into existence after the Cali sank."), citing *Yone Suzuki v. Central Argentine Ry.*, 27 F. 2d 795, 807 (2d Cir. 1928) (denying attachment).

The premise of the plaintiff's claim, then, is decidedly non-maritime and therefore cannot support a Rule B attachment.

Moreover, the FFAs giving rise to plaintiff's alleged liability and which have prompted this attachment are distinctly non-maritime. In determining whether a contract is "maritime" so as to support admiralty jurisdiction, a court must look to both the subject matter of the contract and the services to be performed under the contract. *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.,* 346 F. 3d. 552, 565 (5th Cir. 2003); *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612 (1991). "In order to be considered maritime, there must be a *direct and substantial link* between the contract and the operation of the *ship, its navigation, or its management afloat."* *Alphamate Commodity GMBH v. CHS Europe*, 627 F.3d 183 at 185 (quoting 1 Benedict on Admiralty § 182 (2010) (emphasis added by Court). *See also Norfolk Southern Railway Co. v. James N. Kirby Pty, Ltd., 543 U.S. 14, 25 (2004)* (admiralty jurisdiction depends upon whether maritime commerce is the principal objective of the contract).

The FFAs to which the plaintiff in this case was a party (but not the defendants) do not involve any direct participation in maritime commerce. Rather, the FFAs were simply a financial "bet" based upon a derivative contract. Each side was taking opposing positions about whether a published index would be higher or lower than the rate named in the contract. As

explained by a well-known UK brokerage firm's website posting, the parties' FFA obligations "involves no physical commitment from either party to move a ship or cargo." [4]

As the Court will see from the FFAs contracts attached to the Sachs Declaration (part of Exhibit A), no vessels are identified in the FFAs and no freight or tangible cargo is involved. In short, the FFA does not involve any actual ships, crews, cargo, navigation, ports or freight.

A maritime contract, in contrast, is one in which the "primary objective is to accomplish the transportation of goods by sea…." *Kirby*, 543 U.S. at 24. The primary objective of the FFA contracts is not maritime commerce but ordinary financial speculation; therefore, the FFAs cannot be classified as maritime contracts. It is consequently inappropriate to say that a party to an FFA is engaged in a maritime transaction just as it would be inappropriate to say that one who purchases a Microsoft stock option is engaged in the computer business.

Moreover, it has long been recognized that derivative agreements, such as third-party guarantees of maritime obligations, are not themselves maritime contracts, even though they directly relate to a maritime contract and/or to ships. *See Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.,* 413 F.3d 307 (2d Cir. 2005) (contracts to pay based upon a third-party's breach of a maritime contract are not maritime contracts) *citing Pac. Surety Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440 (7th Cir. 1907); *see also Stewart & Stevenson Services, Inc. v. MacMillan*, Nos. Civ. 94–2332, 94–26931995 WL 10823 (E.D.La., Jan. 11, 1995) (an agreement "to pay damages for another's breach of a maritime charter" is not a maritime contract), quoting *Kossick v. United Fruit Co.,* 365 U.S. 731, 735 (1961). Thus, an

---

[4] See Appendix 1 hereto, printed from Simpson Spence & Young Futures, Forward Freight Agreements at 4.

FFA does not qualify as a maritime contract simply because the measuring index has some relation to ships and shipping.

While some courts have reached the contrary conclusion, including one in this district, the decisions were based on the incorrect assumption that that FFAs are "commitments to perform in the future a shipping service between ship owners charterers, and/or traders." *See e.g., Brave Bulk Transport Ltd. v. Spot on Shipping Ltd.*, No. 07-4546, 2007 U.S. Dist. LEXIS 81137, at *4, *6 (S.D.N.Y. Oct. 30, 2007); *Armada (Singapore) Pte Ltd. v. North China Shipping Co. Ltd.*, 633 F. Supp. 2d 168, 169 (S.D.N.Y. 2009) ("Forward freight agreements are commitments to perform shipping services in the future."); and *Bulk Trading S.A. v. Capex Europe S.A.M.*, No. Civ 10–297, 2011 WL 1088762 at *2 (E.D.La. March 22, 2011) ("Forward freight agreements are commitments to perform shipping services in the future."); *Transfield ER Futures Ltd. v. Deiulemar Shipping S.P.A.*, 2012 WL 123286 (E.D. La. January 17, 2012) ("…the very essence of these FAAs [sic] concerns commitments to perform shipping services in the future.").

The notion that FFAs require or even contemplate the actual performance of shipping services is simply wrong – a fact which is clear from the language of the agreements. Consequently, the contracts are non-maritime and the application of Rule B cannot be supported.

Even if the FFAs are found to be maritime contracts, though, admiralty jurisdiction is still lacking because, unlike the cited cases, this is not a suit to enforce an FFA. Rather, it is a claim by the BVI-based Liquidator of the plaintiff to recoup monies allegedly transferred improperly from plaintiff.

Perceiving this fatal jurisdictional shortcoming, plaintiff seeks to avoid it by, incorrectly, characterizing its claim as a maritime *indemnity* action (Complaint ¶ 10 -"Where the underlying claim sounds in admiralty, so does a claim for indemnity.")  But in this case an essential element of an indemnity claim is lacking -- the *defendant's* actual or implied contractual promise (or tort duty) to pay the underlying claims. *International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.,* 838 F.2d 124, 126 (4th Cir.1988).  Here, there is no allegation that the defendants had a direct liability to the party with whom plaintiff contracted in the FFAs or that the plaintiff, without any fault of its own, somehow became vicariously liable to pay some FFA debts actually incurred by the defendants.

Additionally, for there to be a true indemnity action, there must be proof of the plaintiff's actual payment in place of the defendant. *CPM Corp. Ltd. v. Prominent Shipping PTE Ltd.,* No. 2009 WL 3787380 (S.D.N.Y. Nov., 12, 2009).  There have been no payments made by plaintiff for which reimbursement is sought from defendants, thus plaintiff's "indemnity" claim is in reality nothing more than an ordinary "claw back" claim by a liquidator.

There is no case law to support plaintiff's characterization of its "claw back" claim as maritime. Similar claims, in fact, have consistently been found to be non-maritime. *E.g. Yone Suzuki*, 27 F. 2d at 807. Challenges to a vessel's title or ownership, for example, are not considered maritime claims if based on an equitable theory of recovery. *Gulf Coast Shell and Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010).  In *Gulf Coast*, the court concluded that Gulf Coast had an equitable title rather than a legal claim to title and possession, defeating its Rule B assertion of admiralty jurisdiction. *Id.*  The court further held that the contract and tort

claims asserted by Gulf Coast were not maritime in nature; therefore, there was no admiralty jurisdiction. *Id.*

In sum, the FFAs ultimately at the heart of this dispute are facially non-maritime, but regardless of how the Court resolves that issue, the so-called "indemnity" claims asserted by plaintiff are not maritime in nature but are in reality nothing more than an ordinary civil action to pierce the corporate veil. Consequently, there is no basis for admiralty and maritime jurisdiction and the attachment pursuant to Rule B is invalid.

> **ii. The Plaintiff's references to Chapter 15 of the Bankruptcy Code are not linked to its claims and do not bring U.S. federal bankruptcy rights or defenses into this action or provide a sufficient basis for subject matter jurisdiction**

Plaintiff also seemingly alleges that the Court's jurisdiction can be based on Chapter 15 of the Bankruptcy Code, specifically 11 U.S.C. §1509. (Complaint at ¶ 6, 11 & 82). But, the mere fact a Chapter 15 case has been commenced in New York and a Foreign Representative has been given capacity to sue does not automatically create a federal law issue, or give rise to federal court jurisdiction which would otherwise be lacking. Rather, the federal courts' subject matter jurisdiction depends upon an express Congressional grant of jurisdiction in relation to a live controversy based on U.S. federal rights or defenses, which the plaintiff's foreign law claims do not call into issue. See *Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 (1983)* ("We need not now resolve that issue or decide the precise boundaries of Article III jurisdiction, however, since the present case does not involve a mere speculative possibility that a federal question may arise at some point in the proceeding."), and *Mesa v. California, 489 U.S. 12*

*(1989)* (status as federal employee does not create federal court subject matter jurisdiction without a colorable claim to a federal defense).[5]

### iii. A claim under the Louisiana Non-Resident Attachment Statute is not cognizable in federal court without an independent basis of subject matter jurisdiction

Rule 64 of the Federal Rules is specifically referenced in Supplemental Rule B and allows a federal district court to apply attachment remedies available under the law of the state in which the district court is located. Although plaintiff does not specifically cite the Louisiana Non-Resident Attachment Statute as a basis of jurisdiction, the statute is mentioned as a basis for the attachment order. It is clear, in any case, that a state law attachment statute cannot create federal jurisdiction. *Tanko v. Saperstein*, 149 F. Supp. 317, 322 (N.D. Ill. 1957) ("The procedures employed by the plaintiffs in commencing this action in the State court would not have been available had the action been brought originally in a Federal court. To commence a federal action, seizure of property, garnishment of claim, or other in rem procedures are not enough. Attachment is only an incident of the suit, and not a means of obtaining jurisdiction.")

## b. The contract-based claims are against a party who is not the owner of the attached vessel and the nature of the underlying dispute is not suitable for an attachment

Rule B provides for the attachment of the property of a "defendant," contemplating that the defendant is the entity against which the plaintiff has a direct, bona fide claim. In this

---

[5] It should also be noted that nominal plaintiff, Farenco Shipping Co. Ltd., has been improperly named, and lacks legal capacity to sue in this Court because under the Chapter 15 Recognition Order, which has been referenced in the Complaint at paragraph 6, Nicholas Carter is the only designated person with capacity to sue on behalf of the named plaintiff. See Fed. R. Civ. P. 17(1)(a)(G). A copy of the Recognition Order is attached as Exhibit C.

instance, however, Great Ocean is being deprived of the use of its property even though it can only be held liable if the Court sorts through a morass of foreign law issues and finds, first, that there is liability on the part of the plaintiff on the underlying FFA dispute, and then, second, that as a matter of foreign law the corporate form should be disregarded entirely so as to make Great Ocean responsible for the debts of a separate corporate entity. Such a tenuous and convoluted claim is not the type which Rule B contemplates.

The claims alleged here are hotly disputed, complicated, and depend upon remote issues of foreign law.[6] They are nothing like the straightforward lien-based claims which the Supreme Court considered suitable to support attachment in *Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974)*. There, the Court remarked that the underlying claims were "uncomplicated matters that lend themselves to documentary proof." *Id*. at 609. The Court was also reassured that "the seller with his own interest in the disputed merchandise would need to establish … the probability that his case will succeed to warrant the bonded sequestration of the property pending outcome of the suit." *Id.* The Court further noted that the plaintiff, a conditional seller, was subject to damage liabilities "if there is a successful motion to dissolve the writ," and had its "own interest in avoiding interrupting the transaction." *Id.* at 610.

There is also a constitutional flaw in plaintiff's effort to attach the property of Great Ocean, based as it is on the theory Great Ocean will ultimately be held liable for the alleged debts of another entity. Quite simply, the plaintiff's allegations and a "facially valid complaint"

---

[6] See the declarations of Mark Sachs, barrister and solicitor, attached as Exhibit A, and of Fraser Hern, solicitor, attached as Exhibit B for a discussion of the many points of contention with respect to the allegations of the complaint and otherwise.

are constitutionally insufficient.  See *Doehr v. Connecticut, 501 U.S. 1, 13-14 (1991)* ("Permitting a court to authorize attachment merely because the plaintiff believes the defendant is liable, or because the plaintiff can make out a facially valid complaint, would permit the deprivation of the defendant's property when the claim would fail to convince a jury. . . . The potential for unwarranted attachment in these situations is self-evident and too great to satisfy the requirements of due process absent any countervailing consideration."). *See also Krimstock v. Kelly, 464 F. 3d 246, 253 (2d Cir. 2006)* ("[T]he Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law requires . . . a prompt post-seizure, prejudgment hearing before a neutral judicial or administrative officer to determine whether the [claimant] is likely to succeed on the merits. . .").

Here, it should be apparent that, whatever one may think about its prima facie plausibility, it is impossible to conclude from the prolix and disputed allegations of the complaint that plaintiff is "likely to succeed on the merits" on its complex and novel claims, particularly as they involve complicated questions of foreign law.  This point is further emphasized when it is recognized that even the plaintiff implicitly acknowledges that its claims depend upon its subjective "credibility" judgments.  (Complaint ¶ 48). This alone should give the Court pause in concluding the plaintiff is "likely to succeed on the merits", and this is even more the case in light of the "good faith" and "ordinary course of business" defenses, which are not mentioned in the complaint but are described in the Hern declaration (Exhibit B).

      **c. Pursuant to the Supreme Court's due process doctrine and the *Shaffer* decision, state law attachments require a direct nexus between the claims, forum and defendants, i.e., the equivalent to personal jurisdiction, which the plaintiff's Admiralty Rule B allegations concede are absent in this case.**

An attachment based upon state law requires the plaintiff's claims to meet the nexus requirements for personal jurisdiction against the putative defendant(s). See *Schaffer v. Heitner*, 433 U.S. 186, 213 (1997) (because the attached "property is not the subject matter of this litigation, nor is the underlying cause of action related to the property," the attached property did not "provide contacts with Delaware sufficient to support the jurisdiction of that State's courts over appellants."); *Burnham v. Superior Court of California, County of Marin, 495 U.S. 604, 621 (1990)* ("Shaffer was saying ... that quasi in rem jurisdiction ... must satisfy the litigation-relatedness requirement of International Shoe. The logic of Shaffer's holding ... places all suits against absent nonresidents on the same constitutional footing, regardless of whether a separate Latin label is attached to one particular basis of contact").

Here, the plaintiff has not alleged a constitutionally sufficient nexus, or any nexus at all, between Great Ocean and this jurisdiction. In fact, plaintiff's complaint makes it abundantly clear this is a foreign law dispute between non-resident entities and that there is no jurisdictional connection whatever between this jurisdiction and the vessel now under attachment or its owner. Further, the complaint's ¶ 84 confirms that none of the named defendants "are subject to general jurisdiction in Louisiana."

Despite the clear requirements of *Shaffer*, the plaintiff has made no attempt to plead or show, and the law would not credit, an argument for contacts-based specific jurisdiction in this

case. It is well-established that the mere fortuity of the vessel calling at a U.S port on the instructions of her current charterers does not give rise to the necessary connections for personal jurisdiction. See *De Leon v. Shih Wei Nav. Co., Ltd.*, 269 Fed.Appx. 487, 491 n. 20 (5th Cir.2008) (No jurisdiction based upon "43 to 45 calls made on U.S. ports by vessels owned or managed by Defendants-Appellees during the three years preceding the incident in question."); *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 128 (2d Cir. 2008) ("The unilateral activities of third parties-here, the charterers-cannot, in themselves, satisfy the requirement of contact with the forum."); *Griner Co. v. M/V Conti Blue*, 1996 U.S. Dist. LEXIS 21561*4-5 (S.D.Tex.1996) ("Under Fifth Circuit law, it is clear that the owner of a vessel is not subject to personal jurisdiction merely because his vessel was used to transport goods into the forum state"); *Sibrian v. Chapel Navigation*, 1997 WL 767651 *1, 1997 U.S. Dist. LEXIS 19616 *4 (E.D.La.1997) ("The contacts of a chartered vessel with a particular port 'are better characterized as sporadic rather than continuous and systematic;' and because the owner did not choose the ports, the owner 'cannot be held to have availed itself of the benefits and protections of doing business in Louisiana by virtue of' the contacts."); *see also J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2788 (2011) (purposeful "contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'") (citations omitted).

### d. Alternatively, Ocean Great requests the Court set the amount of security necessary to obtain release of the vessel

Pursuant to the dictates of the federal statutory law, duly registered foreign ship mortgages get preferred status and are entitled to mandatory priority over nearly all competing claims, including any asserted here by reason of the ship's attachment.[7]

Thus, in the event the Court upholds the validity of the attachment, Great Ocean requests the Court to set the amount of security necessary to obtain release of the vessel at $900,000.00. This is the difference between the (currently depressed) sound market value of the vessel ($16,750,000.00) and the outstanding balance of the mortgage lien on the vessel in favor of China Merchants Bank Co. Ltd. ($15,850,000.00).[8]

## IV.   CONCLUSION

Great Ocean respectfully requests that the Court:

1. Schedule an expedited hearing on its motion to vacate the attachment and motion to dismiss for lack of jurisdiction;

---

[7] Although plaintiff has not addressed the issue, it is worthwhile briefly to comment on any possible challenge to the validity or rank of the mortgage. Challenges to mortgages have sometimes been raised on an equitable subordination theory. When raised, such challenges have been held to require proof of "control" by the mortgagee/lender. See Custom Fuel Svcs. v. Lombas Indus., 805 F.2d 561, 566 (5th Cir.1986) ("The prerequisite to a finding of inequitable conduct is a showing that the claimant is in a position of control over the debtor."); Ost-West-Handel Bruno Bischoff GmbH, v. Project Asia Line, Inc., 970 F.Supp. 471, 486 (E.D. Va. 1997) ("'A showing that the [superior] claimant is in a position of control over the debtor' is the prerequisite to any attempt to subordinate a preferred maritime lien."). In addition, the Ost-West decision also concluded the such challenges, i.e. to duly registered foreign mortgages, are inconsistent with the terms of the Ship Mortgage Act. The court expressly stated that "even if all of the foregoing requirements for subordination were satisfied, this Court could not violate the statutory mandate and subordinate the Bank's mortgage." Id. at 487.

[8] The Hong Kong Ship Mortgage, independent valuation certificate and an email from the mortgagee reciting the amount of the outstanding indebtedness are each attached as part of Exhibit A.

2. Dismiss the attachment at plaintiff's costs, reserving Great Ocean's right to seek compensatory damages and costs, including attorney's fees, for the delay to its vessel; and

3. Alternatively, to set the amount of security to obtain the release of the vessel at $900,000.00.

RESPECTFULLY SUBMITTED,

**PHELPS DUNBAR LLP**

BY: */s/ Gary A. Hemphill*
GARY A. HEMPHILL (#6768 )
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: hemphilg@phelps.com
ATTORNEY FOR OCEAN GREAT
INDUSTRIAL

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed on this 29th day of October, 2012 with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/s/ Gary A. Hemphill*